IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMFM Broadcasting, Inc., a Delaware Corporation, d/b/a Clear Channel | ) ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 08 CV 1519 |
| v. | ) ) ) | Honorable Judge James B. Zagel |
| Rebecca Osowiec, an Illinois resident, and Citadel Broadcasting Corporation, a Nevada Corporation. | ) ) ) ) | Magistrate Judge Morton Dunlow |
| Defendants. | ) ) | |

## AMFM BROADCASTING, INC.'S RESPONSE IN OPPOSITION TO CHICAGO FM RADIO ASSETS, LLC'S EMERGENCY MOTION TO DISMISS

Plaintiff AMFM Broadcasting, Inc., doing business as Clear Channel, (collectively "Clear Channel" or "Plaintiff"), by its undersigned counsel, hereby moves this Court to deny Defendant Chicago FM Radio Assets, LLC's, claiming to be improperly sued as Citadel Broadcasting Corporation, motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of this Response in Opposition, Plaintiff states as follows:

### INTRODUCTION

Chicago FM Radio Assets, LLC, claiming to have been incorrectly sued as Citadel Broadcasting Corporation ("Defendant" or "Citadel"), moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(6). The basis of Defendant's motion appears to be that this Court lacks diversity jurisdiction or supplemental jurisdiction to consider Plaintiff's complaint. But based on the allegations contained in Plaintiff's complaint, federal notice pleading requirements, and even Defendant's own case law, this Court has jurisdiction over this matter. Defendant's conclusory arguments that this Court lacks diversity jurisdiction is unsupported by Defendant's motion.

CH1 11443237.1

Moreover, Plaintiff has satisfied its pleading requirements under the Computer Fraud and Abuse

Act (the "CFAA"), supplying this Court with supplemental jurisdiction over Defendant, even if

there were a viable argument against diversity jurisdiction. Finally, this Court properly granted

Plaintiff's temporary restraining order and, based on Plaintiff's preliminary injunction hearing

being delayed, this Court should extend the temporary restraining order restricting Osowiec from

working for Citadel and restricting Osowiec from soliciting Plaintiff's customers for the benefit

of Citadel until such time as a preliminary injunction hearing may be heard.

## ARGUMENT

I.    **Defendant Fails to Establish Facts to Demonstrate that Diversity Jurisdiction Does Not Exist.**

Defendant moves this Court to dismiss Plaintiff's complaint based on a lack of diversity

jurisdiction, claiming that Defendant Rebecca Osowiec is employed by Chicago FM Radio

Assets, LLC, a Delaware corporation. Defendant makes this claim without attaching any

employment contract for Osowiec, any pay stub for Osowiec, or any declarations to establish that

Chicago FM is, in fact, Osowiec's employer. Without more than these hearsay and conclusory

allegations, Defendant has offered nothing to establish that diversity jurisdiction does not exist.

Accordingly, Plaintiff has properly set forth facts alleging diversity jurisdiction.

II.   **Plaintiff Has Properly Pled Its Computer Fraud and Abuse Act Claim Against Osowiec, and, By Extension, Supplemental Jurisdiction Exists Against Defendant.**

Moreover, even assuming that diversity jurisdiction does not exist against Defendant, this

Court has supplemental jurisdiction over Defendant based on Plaintiff's CFAA claim against

Osowiec. While Defendant does not clearly enunciate its argument, it appears that Defendant

seeks to dismiss Plaintiff's complaint based on the argument that this Court lacks supplemental

jurisdiction against Defendant, arguably due to Plaintiff's failure and inability to plead a

CH1 11443237.1

Computer Fraud and Abuse Act ("CFAA") claim.  Pursuant to 28 U.S.C. § 1367, this Court has jurisdiction over the state law claims sought against Defendant so long as it has federal question jurisdiction against Osowiec.  Here, the Plaintiff's complaint sets forth facts sufficient to state a cause of action under the CFAA against Osowiec.  Accordingly, this Court has supplemental jurisdiction over the state law claims sought against Defendant.

Defendant's primary argument in its motion to dismiss is that Plaintiff has failed to state a claim under the CFAA.  But this argument ignores the allegations made in Plaintiff's complaint, namely that Osowiec deleted emails from Plaintiff's computer system prior to leaving Plaintiff's employ.  Under the CFAA and this Court's interpretation of the pleading requirements under that Act, a Plaintiff must plead both damages and loss.  In *Garelli Wong & Assocs., Inc. v. Nichols*, 07 C 6227, 2008 U.S. Dist. LEXIS 3288, * 13 – 14 (N.D. Ill., January 16, 2008), the Northern District of Illinois, in interpreting the Seventh Circuit's decision in *Airport Centers, LLC v. Citrin*, 404 F. 3d 418 (7th Cir. 2006), found that "[t]he statutory requirement of *damage* was satisfied since the defendant's acts impaired the integrity or availability of data." (Emphasis in original).

Defendant claims that the instant case is analogous to both *Nichols* and other cases cited in that decision, including *ResDev v. Lot Builders*, 2005 U.S. Dist. LEXIS 19099 (M.D. Fla., Aug. 10, 2005), and *Worldspan v. Orbitz, LLC*, 2006 U.S. Dist. LEXIS 26153 (N.D. Ill., April 19, 2006).  In each of those cases, the plaintiffs failed to allege facts that the plaintiffs suffered some "diminution in the completeness or useability of data or information on a computer system." *Nichols*, 2008 U.S. Dist. LEXIS 3288, at * 14.  Even assuming that *Nichols* states the

CH1 11443237.1

law of this district,[1] the facts established there are not analogous to the instant case. Here,

Plaintiff has alleged that Osowiec:

> Cop[ied] electronic information files, sen[t] electronic files to USB memory
> devices or other storage devices, delete[d] emails on her Clear Channel account at
> the termination of her employment, print[ed] confidential or trade secret materials
> from Clear Channel's system, or continue[d] to possess Clear Channel's
> electronic files and data for personal gain or that of a competitor.

(V. Compl. at ¶ 64.) While Defendant is correct that Plaintiff has pled that Osowiec

misappropriated Plaintiff's trade secrets, Plaintiff goes further in its allegations, including

pleading that Osowiec deleted emails from Plaintiff's secure computer system. Further, Plaintiff

has pled that this was beyond Osowiec's authority.

On the face of its complaint, Plaintiff satisfies its pleading burden. By pleading the

deletion of emails in violation of Osowiec's authority, Plaintiff satisfies the damages requirement

of the CFAA, alleging that Osowiec impaired the availability of information contained in the

emails she deleted. Under the CFAA, a plaintiff must demonstrate an "impairment to the

integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030.

Moreover, as the Northern District of Illinois enunciated in *C.H. Robinson Worldwide, Inc. v.*

*Command Transp., LLC*, 2005 U.S. Dist. LEXIS 28063, at * 12, "all a complaint need do is

narrate a claim for relief." *Citing to Gale v. Hyde Park Bank*, 384 F.3d 451, 453 (7th Cir. 2004).

Here, Plaintiff has satisfied its pleading burden.

Second, Plaintiff has pled sufficient loss, defined by the CFAA as $5,000 in losses in a

one-year period. While Defendant claims that Plaintiff makes "virtually identical allegations to

---

[1] Clear Channel does not concede that *Nichols* accurately states the law of this district. *See, e.g.,*
*C.H. Robinson Worldwide, Inc. v. Command Transp., LLC*, 05 C 3431, 2005 U.S. Dist. LEXIS
28063, * 9 (N.D. Ill., Nov. 16, 2005) (finding that a plaintiff stated a claim under the CFAA
when it alleged that the defendant had wrongfully copied trade secrets to the plaintiff's
detriment) (attached hereto as Ex. 1); *see also Charles Schwab & Co., Inc. v. Carter*, 04 C 7071,
2005 U.S. Dist. LEXIS 5611, at * 3 (N.D. Ill. Feb. 11, 2005) (same) (attached hereto as Ex. 2).

those made by the plaintiff in <u>Nichols</u>," this ignores the Plaintiff's complaint and, for that matter, the *Nichols* court's discussion of that pleading. In *Nichols*, the Court wrote that "in its current form, the complaint states only that 'Defendant's conduct caused losses to Garelli Wong in excess of $5,000.'" *Nichols*, 2008 U.S. Dist. LEXIS 3288, at * 18. Here, however, Plaintiff goes much further than the plaintiff in *Nichols*, alleging that the losses exceeded $5,000 based on its investigation of Osowiec's computer fraud and the subsequent loss of Plaintiff's business due to the loss of its information. Importantly, the Northern District of Illinois has routinely found that, where plaintiffs have pled even less, this fulfilled their pleading requirements for losses under the CFAA. *See, e.g.*, *C.H. Robinson Worldwide, Inc. v. Command Transp. LLC*, 2005 U.S. Dist. LEXIS 28063, at * 8; *see also Charles Schwab & Co. v. Carter*, 2005 U.S. Dist. LEXIS 5611, at * 7.

Accordingly, because Plaintiff has properly alleged the elements required to plead a cause of action under the CFAA, this Court has supplemental jurisdiction over the state law claims brought against Defendant and Defendant's motion to dismiss should be denied.

**III.    This Court Properly Granted A Temporary Restraining Order.**

Defendant's third argument is that this Court should modify or extinguish the TRO it granted Plaintiff. In support of this argument, Defendant relies mainly on an argument that Plaintiff failed to notify Defendant of its motion. First, this allegation grossly ignores the efforts that Plaintiff took to notify Defendant of its motion, including serving Defendant's registered agent and delivering a courtesy copy to Defendant's radio station. Second, the TRO that was entered by this Court was proper given the Declarations and arguments presented before the Court and did not extend beyond this Court's powers. Third, given the delay in this Court

hearing Plaintiff's preliminary injunction hearing, this Court should extend the TRO to a time at which such a hearing can take place.

First, Defendant claims that the TRO was improvidently granted because Plaintiff failed to provide notice to Defendant. Defendant either ignores Plaintiff's service of Defendant's agent and the courtesy copy Plaintiff delivered to Defendant's radio station or intentionally misstates these facts. (*See* Service of Process to Citadel, attached hereto as Ex. 3, and Messenger Confirmation Receipt, attached hereto as Ex. 4.) On March 14, 2008, Plaintiff served Citadel Broadcasting Corporation's registered agent, CT Corporation. (*See* Ex. 3.) Also on March 14, 2008, Plaintiff sent a courtesy copy of its motion to Defendant's radio station located at 190 North State Street, Chicago, Illinois. (*See* Ex. 4.) Further, Plaintiff inquired as to whether Winston & Strawn would accept service on behalf of Citadel Broadcasting, as evidenced by Defendant's over Exhibit 4. As Defendant even admits, it did not respond to Clear Channel's attempt to discern whether Defendant's now-counsel would accept service on behalf of Defendant. Defendant's now claims of lack of notice ignore both the facts and Plaintiff's good faith attempts to see whether Defendant's counsel would accept service of process on behalf of Defendant.

Second, this Court's order was narrow and supported by the declarations and case law presented by Plaintiff. (*See* Pl.'s Mot. for TRO and Mem. of Law.) Based on the declarations provided by Plaintiff, it is evident that Osowiec is in breach of her non-compete and non-solicitation agreements with Plaintiff.[2] Plaintiff also has presented evidence that Osowiec is guilty under the CFAA. Moreover, Plaintiff has presented evidence that Osowiec is now

---

[2] While Defendant argues that Plaintiff only seeks to prevent Osowiec from soliciting Plaintiff's customers, this characterization also ignores Plaintiff's complaint. Plaintiff seeks to restrict Osowiec from working for Citadel for six months as agreed to in her non-compete agreement. (*See* V. Compl. at ¶¶ 39, 46, generally.)

CH1 11443237.1

employed by Citadel, that her employment with Citadel is both a violation of her non-compete and non-solicitation agreement, that Osowiec and Defendant have both sought to mislead Plaintiff of Osowiec's role and/or employment with Defendant, and that Osowiec's employment with Defendant has damaged Plaintiff. These facts were enough to justify this Court's entry of a limited 10-day restraining order.

Moreover, the facts underlying the pleadings before the Court justify the maintenance of this TRO until a preliminary injunction hearing can take place. This Court should extend the TRO to a time at which Plaintiff's arguments can be heard at a preliminary injunction hearing. Plaintiff seeks no more than to protect its contractual rights, proprietary information, trade secrets, and good will. Preventing Osowiec from sharing Plaintiff's trade secrets with Plaintiff's competitor is not only recognized under Illinois law, but encouraged. (*See* Pl.'s Mem. of Law at pp. 14 – 16.) This Court should extend its TRO to a date at which time Plaintiff may be heard for a preliminary injunction hearing, which Plaintiff prays would occur on or before April 7, 2008.

## CONCLUSION

For the reasons stated above, Clear Channel prays that this Court deny Defendant Chicago FM Radio Assets, LLC's, claiming to be improperly sued as Citadel Broadcasting Corporation, motion to dismiss, setting a date for a preliminary injunction hearing to take place, extending its temporary restraining order until the date on which this Court will hear arguments for a preliminary injunction hearing, ordering Defendant and Rebecca Osowiec to answer outstanding discovery on or before March 31, 2008, and for any further relief this Court deems just and appropriate.

**DATED: March 24, 2008**

Respectfully submitted,

AMFM BROADCASTING, INC.


By:_____/s/  Christopher A. Garcia_____
            One of Its Attorneys

Christopher A. Garcia
Yvette A. Heintzelman
Justin K. Beyer
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois 60603
(312) 460-5000

## CERTIFICATE OF SERVICE

The undersigned, one of the attorneys for AMFM Broadcasting, Inc., hereby certifies that

a true and correct copy of the foregoing RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO

DISMISS was served via electronic filing on March 24, 2008 to:

> Susan M. Benton
> Sean Nash
> Winston & Strawn LLP
> 35 West Wacker Drive
> Chicago, Illinois 60601
>
> Rebecca Osowiec
> 12528 Anand Brook Drive
> Orland Park, IL  60475


> _____/s/ Christopher A.  Garcia_____
> Christopher a. Garcia

CH1 11443237.1

# Exhibit 1

LEXSEE 2005 U.S. DIST. LEXIS 28063

**C.H. ROBINSON WORLDWIDE, INC., Plaintiff, v. COMMAND
TRANSPORTATION, LLC, PAUL LOEB, and ERIC HARRISON, Defendants.**

**Case No. 05 C 3401**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION**

*2005 U.S. Dist. LEXIS 28063*

**November 16, 2005, Decided
November 16, 2005, Filed**

COUNSEL: [*1] For C.H. Robinson Worldwide Inc. a
Delaware Corporation, Plaintiff: Michael Dale Wexler,
Seyfarth Shaw, Chicago, IL; J Scott Humphrey, Seyfarth
Shaw LLP, Chicago, IL.

For Command Transportation LLC an Illinois Limited
Liability Company, Paul Loeb an individual, Defendants:
Stephen Fedo, William John Tarnow, Neal, Gerber &
Eisenberg, Chicago, IL.

For Eric Harrison an individual, Defendant: Mitchell L.
Marinello, Novack & Macey, Chicago, IL; Joseph S.
Nacca, Novack and Macey, LLP,. Chicago, IL.

JUDGES: AMY J. ST. EVE, District Court Judge.

OPINION BY: AMY J. ST. EVE

OPINION

MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff C.H. Robinson Worldwide, Inc. ("C.H.
Robinson") filed the present eight-count First Amended
Complaint against Defendants Command Transportation,
LLC ("Command"), Paul Loeb, and Eric Harrison. C.H.
Robinson alleges that Loeb and Harrison violated the
Computer Fraud and Abuse Act, *18 U.S.C. § 1030 et seq.*
("CFAA"). C.H. Robinson also alleges state law claims
of breach of contract, misappropriation of trade secrets,

unfair competition, conversion, fraud, conspiracy, and a
constructive trust claim pursuant [*2] to the Court's
supplemental jurisdiction. *See 28 U.S.C. § 1367.* Before
the Court is Defendants' Motion to Dismiss C.H.
Robinson's First Amended Complaint pursuant to
*Federal Rule of Civil Procedure 12(b)(6).* [1] As discussed
below, the Court grants in part and denies in part
Defendants' Motion to Dismiss.

> 1  Pursuant to *Federal Rule of Civil Procedure
> 10(c),* Defendant Eric Harrison adopted the
> arguments set forth by Defendants Command
> Transportation and Paul Loeb in their
> Memorandum in Support of their Motion to
> Dismiss. (R. 27-1.)

BACKGROUND

2

> 2  As required under *Rule 12(b)(6),* the Court
> presumes the allegations in the complaint are true.

Plaintiff C.H. Robinson is a Delaware corporation
with its principal place of business [*3] in Eden Prairie,
Minnesota. (R. 15-1; First Am. Compl. P 1.) C.H.
Robinson is in the business of providing commercial
logistics services, and in December 1999, purchased
substantially all of the assets of American Backhaulers
("Backhaulers"), another logistics company. (*Id.* PP 1-2,
25.) C.H. Robinson's purchase of Backhaulers' assets
included, among other things, (1) the exclusive
acquisition of Express, a proprietary software program
(the "Express software"), (2) the execution of

2005 U.S. Dist. LEXIS 28063, *3

non-competition, non-solicitation, and confidentiality agreements by Backhaulers' employees, (3) Backhaulers' know-how, and (4) Backhaulers' intellectual property rights. (*Id.* PP 2, 26.)

Defendant Command Transportation, LLC, is a Delaware limited liability company with its principal place of business in Skokie, Illinois. (*Id.* P 3.) Command is a competitor of C.H. Robinson and is in the business of freight brokerage services. (*Id.*) Also, Command conducts business under the assumed names of DND Express and DND Logistics and was previously known as Command Logistics Systems, LLC. (*Id.*)

Defendant Paul Loeb, an individual residing at 223 Linden Park Place, Highland Park, Illinois, is the [*4] previous owner of Backhaulers. (*Id.* P 4.) C.H. Robinson conditioned its purchase of Backhaulers' assets "upon Loeb ... signing and complying with a non-compete, non-solicitation, and confidentiality agreement." (*Id.* P 27.) That agreement precluded Loeb from (1) "competing with C.H. Robinson," (2) "soliciting or inducing C.H. Robinson's employees to leave for a ... period of time," (3) "utilizing or disclosing proprietary information of C.H. Robinson," (4) taking any C.H. Robinson property, (5) disclosing any "trade secrets, know-how, [or] other proprietary documents and information related to the business," and (6) "using any such information for [his] own benefit or the benefit of any third party so long as such information is not in the public domain." (*Id.* PP 27, 29.) Loeb worked at C.H. Robinson from December 1999 until his voluntarily departure on September 30, 2002. During that time, Loeb had exposure to C.H. Robinson's confidential and proprietary information. (*Id.* PP 27, 57.) Presently, Loeb is affiliated with Command. (*Id.* P 4.)

Defendant Eric Harrison, an individual residing at 715 Astor Lane, Wheeling, Illinois, is a former employee of Backhaulers [*5] and was a key developer of the Express software. (*Id.* P 5.) After C.H. Robinson purchased Backhaulers' assets in December 1999, Harrison moved to Minnesota and became C.H. Robinson's Director of Technology. (*Id.* PP 5, 33.) Harrison implemented and further developed the Express software across all of C.H. Robinson's business, at which time he had exposure to confidential and proprietary information, including the Express software source code, object code, and functionality. (*Id.* PP 5, 33-34, 57.) In April 2002, Harrison voluntarily left C.H. Robinson, at which time he entered into an agreement with C.H.

Robinson that contained non-competition, non-solicitation, confidentiality, and invention assignment provisions. (*Id.* P 5.) Harrison is now associated with Command as a software developer. (*Id.* P 51.) According to C.H. Robinson, Loeb and Harrison, now employees of Command, have recently developed a new software program, Slingshot, "which is identical to C.H. Robinson's Express software." (*Id.* at P 52.)

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to *Rule 12(b)(6)* is to test the legal sufficiency of a complaint, not the merits of the case. [*6] *Triad Assocs. v. Chicago Hous. Auth., 892 F.2d 583, 586 (7th Cir. 1989).* The Court will only grant a motion to dismiss if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Centers v. Mortgage, Inc., 398 F.3d 930, 933 (7th Cir. 2005)* (quoting *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed.2d 80 (1957)).* In making its determination, the Court must assume the truth of the facts alleged in the pleadings, construe the allegations liberally, and view them in the light most favorable to the plaintiff. *Centers, 398 F.3d at 933.*

## ANALYSIS

### I. Computer Fraud & Abuse Act Claim -- Count VIII [3]

[3] On June 13, 2005, the Court dismissed C.H. Robinson's initial Complaint based on its failure to properly allege diversity jurisdiction. *See 28 U.S.C. § 1332.* In its First Amended Complaint, C.H. Robinson included a claim under the Computer Fraud and Abuse Act, *18 U.S.C. § 1030 et seq.* that confers federal question subject matter jurisdiction on the Court. *See 28 U.S.C. § 1331.* The Court will address this count first in order to ensure that the Court has subject matter jurisdiction over the remaining counts.

[*7] C.H. Robinson alleges that Loeb and Harrison violated *Sections 1030(a)(2)(C), 1030(a)(4),* and *1030(a)(5)(A)(iii)* of the Computer Fraud and Abuse Act ("CFAA"). Defendants argue that C.H. Robinson has failed to state a claim under the CFAA because C.H. Robinson (1) did not properly allege the requisite damage or loss as those terms are defined by the CFAA, and (2) did not allege that Loeb and Harrison unlawfully

accessed C.H. Robinson's computer system.

### A. Loss or Damage

First, Defendants argue that C.H. Robinson failed to properly allege that it suffered the requisite damage or loss as those terms are defined by the *CFAA. Section 1030(g)* provides, in relevant part, that "any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief," and "[a] civil action for a violation of this section may be brought only if the conduct involves one of the factors set forth in clause (i), (ii), (iii), (iv), or (v) of subsection (a)(5)(B)." *See 18 U.S.C. § 1030(g)*. Thus, a party bringing a civil action under the CFAA must [*8] allege both: (1) a violation of one of the subsections of *Section 1030*; and (2) one of the listed factors in *Section 1030(a)(5)(B)(i)-(v)*. *See Charles Schwab & Co., Inc. v. Carter, 2005 U.S. Dist. LEXIS 5611, No. 04 C 7071, 2005 WL 351929, at *3 (N.D. Ill. Feb. 11, 2005)*. The factors in *Sections 1030(a)(5)(B)(i)-(v)* do not address prohibited conduct, but instead list specific forms of "damage" or "loss" that are "possible harmful results of violations of other parts of the statute." *Id.*

Here, C.H. Robinson alleges that it "suffered damages as a result of Harrison's and Loeb's actions in an amount to be determined at trial." (R. 15-1, First Am. Compl. P 103.) Viewing the allegations in the First Amended Complaint in a light most favorable to C.H. Robinson, C.H. Robinson is claiming "loss to one or more persons during any 1-year period ... aggregating at least $ 5,000 in value." *See Section 1030(a)(5)(B)(i)*. C.H. Robinson's allegations of loss consist of (1) the loss in value of trade secrets such as the Express software and other proprietary and confidential information that was not previously known to the public, and (2) the loss of competitive advantage. (R. 15-1, First Am. Compl. PP [*9] 58, 59.)

In a similar matter where a plaintiff alleged wrongful copying of proprietary financial modeling computer software, the Court discussed damages under the CFAA:

> Chief Judge Charles Kocoras recognized that a plaintiff stated a claim under the CFAA when it alleged that the defendant had exceeded his authorized access and acquired trade secrets that were later used

to the detriment of the plaintiff. In addition, a district court in the Western District of Washington determined that a former employer properly stated a claim under the CFAA when it alleged that a former employee had sent e-mails including trade secrets and proprietary information to a competitor while still employed by the plaintiff.

*Charles Schwab & Co., Inc., 2005 U.S. Dist. LEXIS 5611, 2005 WL 351929, at *3* (citations omitted). Similarly, "caselaw supports an employer's use of the CFAA's Civil Remedies to sue former employees and their new companies who seek a competitive edge through wrongful use of information from the former employer's computer system." *Id.* (quoting *Pac. Aero. & Elecs., Inc. v. Taylor, 295 F. Supp. 2d 1188, 1195 (E.D. Wash. 2003)*). C.H. Robinson has properly alleged [*10] "loss" under the CFAA based on its allegations of the loss in value of trade secrets and loss of competitive edge.

Meanwhile, Defendants did not develop their cursory argument that *Nexans Wires S.A. v. Sark-USA, Inc., 319 F.Supp.2d 468, 476-78 (S.D.N.Y. 2004)* should control. Defendants' attempt at developing this argument in their Reply Brief does not save the day because when a defendant fails to raise or develop an issue until reply, he waives the argument because the plaintiff has had no chance to respond. *See Kelso v. Bayer Corp., 398 F.3d 640, 643 (7th Cir. 2005)* (citation omitted). Accordingly, Defendants' argument concerning C.H. Robinson's "loss" fails.

### B. Unlawful Access

Second, Defendants contend that C.H. Robinson has not alleged unlawful access of its computers as required under *Sections 1030(a)(2)(C), 1030(a)(4),* and *1030(a)(5)(A)(iii)* of the CFAA. More specifically, Defendants argue that C.H. Robinson fails to allege that Loeb or Harrison accessed C.H. Robinson's protected computer system to steal the trade secret information at issue. Plaintiff argues that it properly stated a CFAA cause of action by alleging that Loeb and Harrison [*11] intentionally exceeded their authorized access when they accessed C.H. Robinson's protected network to acquire the Express software for the benefit of themselves and Command.

The Court turns to the federal notice pleading

2005 U.S. Dist. LEXIS 28063, *11

standards under *Federal Rule of Civil Procedure 8(a)(2)*. In alleging its claim under the CFAA, C.H. Robinson incorporates by reference all allegations from paragraphs 1 through 63, including the allegations of Loeb's and Harrison's inappropriate use of C.H. Robinson's proprietary information and software code in developing Slingshot. (R. 15-1, First Am. Compl. PP 53-57.) It further alleges that Loeb and Harrison did not have authorization to access C.H. Robinson's "computer systems, computerized information, access software, access source code, access object code, or continue to possess C.H. Robinson electronic files and data for their personal gain." (*Id.* P 101.) C.H. Robinson alleges that Loeb and Harrison violated sections of the CFAA through these actions. (*Id.* P 102.) These allegations satisfy the liberal notice pleading standards of *Rule 8(a)*. *See Gale v. Hyde Park Bank, 384 F.3d 451, 453 (7th Cir. 2004)* **[*12]** ("All a complaint need do is narrate a claim for relief.")

Defendants nonetheless assert that C.H. Robinson failed to allege that Loeb or Harrison unlawfully accessed a protected computer to obtain information involving an interstate or foreign communication as required under *Section 1030(a)(2)(C)* because C.H. Robinson did not suggest that Loeb or Harrison intercepted interstate communications. Defendants, however, ignore relevant language from *Section 1030(a)(2)(C)* that prohibits a person from unlawfully accessing a computer to "obtain information from any protected computer *if the conduct involved an interstate or foreign commerce.*" *18 U.S.C. § 1030(a)(2)(C)* (emphasis added). The plain language of this statute indicates that the conduct of unlawfully accessing a computer, and not the obtained information, must involve interstate of foreign commerce. *See Charles Schwab & Co., Inc. v. Carter, 2005 U.S. Dist. LEXIS 21348, 2005 WL 2369815, at *8 (N.D. Ill. Sep. 27, 2005)* (downloading substantial volumes of files from plaintiff's computers involved interstate commerce because plaintiff maintained interstate computer network). Here, C.H. Robinson alleges that its "computer **[*13]** system is a protected computer and network which is used across state lines in interstate commerce." (R. 15-1, First Am. Compl. P 100.) Viewing the allegations in a light most favorable to C.H. Robinson, it is reasonable to infer that Defendants' conduct involved interstate commerce.

Finally, Defendants contend that C.H. Robinson failed to allege with the particularity required by *Federal Rule of Civil Procedure 9(b)* that Loeb or Harrison accessed a protected computer "knowingly and with intent to defraud." Under *Rule 9(b)*, "intent, knowledge and other condition of mind of a person may be averred generally." *Fed.R.Civ.P. 9(b)*. The Rule's particularity requirements do not apply to intent allegations. Defendants' motion to dismiss Count VIII is denied.

## II. Breach of Contract -- Count I

Defendants contend that C.H. Robinson did not properly allege that Loeb and Harrison breached their non-competition agreements and asset purchase agreements. Citing Illinois law, Defendants specifically argue that C.H. Robinson failed to indicate the essential elements of a contract and the exact contracts at issue. **[*14]** It is well-established, however, that the Federal Rules of Civil Procedure -- not state procedural rules -- govern diversity actions and state law claims brought in federal court through supplemental jurisdiction. *Fidelity Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co., 412 F.3d 745, 750 (7th Cir. 2005); Houben v. Telular Corp., 309 F.3d 1028, 1032-36 (7th Cir. 2002)*. As previously noted, under the liberal federal notice pleading standard, a complaint need only state "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)(2)*. This statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson, 355 U.S. at 47; see also Shah v. Inter-Cont'l Hotel Chicago Operating Corp., 314 F.3d 278, 282 (7th Cir. 2002)*.

In its First Amended Complaint, C.H. Robinson identifies which contracts are at issue. (*See* R. 15-1, First Am. Compl. PP 27-31, 65.) Further, C.H. Robinson alleges how Loeb and Harrison breached these agreements, by listing six **[*15]** different actions, including utilizing or disclosing the Express software. (*Id.* P 67.) As such, C.H. Robinson has given Defendants notice of its breach of contract claim and the grounds upon which it rests. Accordingly, the Court denies Defendants' motion to dismiss Count 1 of the First Amended Complaint.

## III. Illinois Trade Secrets Act -- Count II

As a threshold matter, Defendants contend that C.H. Robinson, as a Delaware corporation with its principal place of business in Minnesota, did not properly allege why the Illinois Trade Secrets Act ("ITSA"), *765 ILCS 1065, et seq.,* should apply under Count II. Under the

*Erie* doctrine "a federal court is not authorized to apply a different substantive law in a diversity case from the law that a state court would apply were the case being litigated in a state court," and thus Illinois law is the source for choice-of-law rules under the circumstances. *FDIC v. Wabick, 335 F.3d 620, 624-25 (7th Cir. 2003)* (*Erie* doctrine applies to non-diversity cases where state law supplies the rule of decision). Under Illinois trade secrets law, courts must apply the law of the state where the alleged wrong took [*16] place or where the benefit was obtained, which is typically the defendant's principal place of business. *See Mergenthaler Linotype Co. v. Leonard, 66 Ill.App.3d 789, 803, 23 Ill.Dec. 352, 383 N.E.2d 1379 (Ill.App.Ct. 1978); see also Salton, Inc. v. Philips Domestic Appliances & Personal Care B. V., 391 F.3d 871, 879 (7th Cir. 2004).* Because Command's principal place of business is in Illinois and Defendants received the benefits of Harrison and Loeb's alleged misappropriation of C.H. Robinson's trade secrets in Illinois, Illinois law applies.

Next, Defendants contend that Count II does not identify what C.H. Robinson claims is a trade secret. In its First Amended Complaint, C.H. Robinson alleges how Loeb and Harrison unlawfully acquired C.H. Robinson's trade secrets, describes the trade secrets in sufficient detail, and explains how Defendants are using the trade secrets. (R. 15-1, First Am. Compl. PP 38-63, 70-76.) Further, despite Defendants' contention, litigants are not required to disclose details when alleging the misappropriation of a trade secret "for the simple reason that such a requirement would result in public disclosure of the purported [*17] trade secret." *Automed Techs., Inc. v. Eller, 160 F.Supp.2d 915, 920-21 (N.D. Ill. 2001)* (citation omitted). Plaintiff has satisfied its pleading requirements for Count II, and the Court denies Defendants' motion to dismiss Count II.

## IV. Preemption Under Illinois Trade Secrets Act -- Counts III through VII

Next, Defendants contend that the ITSA preempts C.H. Robinson's common law claims of unfair competition, conversion, fraud, conspiracy, and constructive trust. [4] They argue that Section 8 of the ITSA preempts all common law claims if they are arguably based, in whole or in part, on allegations of misappropriation of trade secrets. *See 765 ILCS 1065/8; see also PepsiCo, Inc. v. Redmond, 54 F.3d 1262, 1269 (7th Cir. 1995)* ("ITSA abolishes any common law

remedies or authority contrary to its own terms"). *Section 1065/8(a)* states that the "Act is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret." *McDonald's Corp. v. American Motorists Ins. Co., 321 Ill.App.3d 972, 986, 255 Ill.Dec. 67, 748 N.E.2d 771 (Ill.App.Ct. 2001).* [*18] By its plain terms, the ITSA preempts claims "only when they rest on conduct that is said to misappropriate trade secrets." *Hecny Transp., Inc. v. Chu, 430 F.3d 402, 2005 U.S. App. LEXIS 23506, 2005 WL 2842081, at *2 (7th Cir. 2005).* In other words, preemption "does not apply to duties imposed by law that are not dependent upon the existence of competitively significant secret information." *Id.* The Court thus reviews the claims that Defendants challenge to determine whether they are dependent on the misappropriation of a trade secret. *See Thomas & Betts Corp. v. Panduit Corp., 108 F.Supp.2d 968, 972 (N.D. Ill. 2000); see, e.g., McDonald's Corp, 321 Ill.App.3d at 986.*

4   Whether the ITSA preempts C.H. Robinson's constructive trust claim is not at issue, because under Illinois law a constructive trust is not a separate cause of action, but rather an equitable remedy. *See Eychaner v. Gross, 202 Ill.2d 228, 274, 269 Ill.Dec. 80, 779 N.E.2d 1115 (2002).* Indeed, C.H. Robinson admits that it is seeking a constructive trust for remedial purposes, and thus the Court need not dismiss Count VII. *See, e.g., Chicago Park District v. Kenroy, Inc., 107 Ill.App.3d 222, 224-25, 63 Ill.Dec. 134, 437 N.E.2d 783 (Ill.App.Ct. 1982).*

[*19] ## A. Unfair Competition -- Count III

Under its unfair competition claim, C.H. Robinson alleges that "Defendants are unfairly competing in the market place by utilizing C.H. Robinson's confidential information in the marketplace, soliciting and or hiring C.H. Robinson employees, soliciting C.H. Robinson's employees for employment to gain access to C.H. Robinson's confidential information, soliciting confidential information from C.H. Robinson employees, and/or utilizing C.H. Robinson's property or proprietary software." (R. 15-1, First Am. Compl. P 79.)

C.H. Robinson's unfair competition allegations fall squarely within the ITSA's preemption clause because the claim is premised on its confidential information and proprietary software. *See Thomas & Betts Corp., 108*

2005 U.S. Dist. LEXIS 28063, *19

*F.Supp.2d at 973* (unfair competition allegations simply described how defendants used plaintiff's confidential information). In other words, the unfair competition claim is "dependent upon the existence of competitively significant secret information." *Hecny Transp., Inc. v. Chu, 2005 U.S. App. LEXIS 23506, 2005 WL 2842081, at *2.* In fact, in alleging its claim under the ITSA, C.H. Robinson unequivocally states [*20] that "the proprietary business, software, and customer information of C.H. Robinson constitute trade secrets." (R. 15-1, First Am. Compl. P 70.) Although C.H. Robinson argues that the unfair competition claim is premised on Defendants' illegal solicitation and hiring of C.H. Robinson's employees, C.H. Robinson cannot ignore its allegations that the unlawful use of its trade secrets underscores its claim. Therefore, the ITSA preempts C.H. Robinson's unfair competition claim and the Court grants Defendants' motion to dismiss Count III with prejudice.

**B. Conversion -- IV**

Next, C.H. Robinson alleges that "Defendants individually or in concert with another removed from C.H. Robinson or retained its property (software and/or information) without authorization, and converted it to their own use." (R. 15-1, First Am. Compl. P 83.) Due to C.H. Robinson's bare-boned allegation, it is unclear if the "information" or "software" Defendants allegedly converted were trade secrets, and the Court cannot determine whether the ITSA preempts this claim. On that same note, due to these nebulous allegations, C.H. Robinson has not fulfilled the federal notice pleading standard because the allegations [*21] do not "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson, 355 U.S. at 47; see also Conner v. Illinois Dep't of Natural Res., 413 F.3d 675, 679 (7th Cir. 2005)* ("pleading is still vitally important to inform the opposing party of the grounds upon which a claim rests"). As such, the Court grants Defendants' motion to dismiss Count IV without prejudice and grants C.H. Robinson leave to amend this claim.

**C. Fraud -- Count V**

In Count V, C.H. Robinson alleges that "Defendants individually or in concert with one another falsely represented to C.H. Robinson that it was exclusively purchasing Express, that the agreements entered into with Harrison and Loeb were being honored and/or that C.H. Robinson's property had been returned upon Harrison's

and Loeb's termination of employment." (R. 15-1, First Am. Compl. P 89.) C.H. Robinson further alleges that Defendants' misrepresentations resulted in the loss of monies and goodwill concerning the Express software. (*Id.* P 90.)

Again, the Express software is C.H. Robinson's proprietary software and is a basis for C.H. Robinson's Illinois [*22] Trade Secret Act claim. Because C.H. Robinson's fraud claim rests on conduct that is, in essence, the misappropriating of trade secrets, the ITSA preempts this claim. *See Hecny Transp., Inc. v. Chu, 2005 U.S. App. LEXIS 23506, 2005 WL 2842081, at *2.* The Court grants Defendants' motion to dismiss Count V with prejudice.

**D. Conspiracy -- Count VI**

C.H. Robinson also alleges a common law conspiracy claim. In Count VI, C.H. Robinson states that certain individuals had a "meeting of the minds to improperly compete with C.H. Robinson, acquire C.H. Robinson's proprietary software and information, utilize or disclose CH. Robinson's software, property, confidential information or trade secrets information, not allow C.H. Robinson to realize the benefit of its bargains with Harrison and/or Loeb and waste revenues of C.H. Robinson." (R. 15-1, First Am. Compl. P 93.) Because C.H. Robinson unequivocally alleges that these individuals conspired to acquire its proprietary software, confidential information, and trade secrets, the ITSA preempts this conspiracy claim. Hence, the Court grants Defendants' motion to dismiss Count VI with prejudice.

**CONCLUSION**

For the foregoing reasons, the Court [*23] grants in part and denies in part Defendants' motion to dismiss. The Court dismisses Plaintiff's common law claims under Counts III, V, and VI with prejudice. The Court dismisses Count V without prejudice. Plaintiff has until December 6, 2005 to file a Second Amended Complaint.

Dated: November 16, 2005

**ENTERED**

**AMY J. ST. EVE**

**United States District Court Judge**

# Exhibit 2

LEXSEE 2005 U.S. DIST. LEXIS 5611

**CHARLES SCHWAB & CO., INC., Plaintiff, v. BRIAN D. CARTER, ACORN ADVISORY MANAGEMENT, L.L.C., AND ACORN ADVISORY CAPITAL, L.P., Defendants.**

Case No. 04 C 7071

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*2005 U.S. Dist. LEXIS 5611*

February 11, 2005, Decided

**SUBSEQUENT HISTORY:** Summary judgment denied by, Motion denied by *Charles Schwab & Co. v. Carter, 2005 U.S. Dist. LEXIS 21348 (N.D. Ill., Sept. 27, 2005)*

**DISPOSITION:** The court denied the defendants' motion to dismiss Count VI of the plaintiff's complaint

**COUNSEL:** [*1] For Charles Schwab & Company, Inc., Plaintiff: Eric D. Brandfonbrener, Darrell J. Graham, Jonathan R Buck, Perkins Coie LLC, Chicago, IL.

For Brian D. Carter, Acorn Advisory Management, LLC, Capital Acorn Advisory Capital L.P., Defendants: Peter Vincent Baugher, Anna S Eisner, Arthur J. Howe, Schopf & Weiss, Chicago, IL.

**JUDGES:** AMY J. ST. EVE, District Court Judge.

**OPINION BY:** Amy J. *St Eve

**OPINION**

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiff Charles Schwab & Co., Inc. ("Schwab") commenced this action against Defendants Brian D. Carter ("Carter"), Acorn Advisory Management, L.L.C. and Acorn Advisory Capital (collectively "Acorn"), alleging violations of title *18, United States Code,*

*Sections 1030(a)(2)(A), (a)(2)(C),* and *1030(a)(4)* of the Computer Fraud and Abuse Act ("CFAA"), and various state law claims. Before the Court is Defendants' motion to dismiss the CFAA claim in Count VI pursuant to *Federal Rules of Civil Procedure 12(b)(6).* The Court denies this motion for the reasons discussed below.

**BACKGROUND**

Schwab alleges in its Second Amended Verified Complaint ("SAVC") that Defendants engaged [*2] in a plan to wrongfully copy Schwab's proprietary financial modeling computer software and accompanying files. Specifically, Schwab contends that Acorn induced Carter, an employee of Schwab, to copy computer information, resign from Schwab, and take up employment with Acorn, delivering the copied information to Acorn.

**I. The Parties**

Plaintiff Schwab is a California corporation. (SAVC at P 17.) Schwab formerly had a business division, Schwab Soundview Capital Markets' Investment Analytics Division ("IA"), for which Carter worked. (*Id.* at PP 2-3.) Schwab closed that division on November 1, 2004, and either transferred or laid off all employees. (*Id.*) Defendant Carter is a former employee of Schwab, where he worked as the Director of Information Technology for IA. (*Id.* at P 1.) He resigned from Schwab on October 22, 2004, and began working with Acorn. (*Id.* at PP 11-12.)

**II. Relationship between Schwab, Carter, and Acorn**

Carter worked as Director of Information Technology for IA, a division of Schwab. (*Id.* at P 2.) IA provided analytical research to institutional clients, including Acorn. (*Id.*) In September 2004, Schwab announced that it [*3] intended to close IA. (*Id.* at P 4.) Upon learning such information, Acorn made an offer to purchase the business unit and acquire IA's software and a number of employees, including Carter. (*Id.* at P 5.) Schwab turned down that offer because it wanted to protect its business modeling software. (*Id.* at P 6.) After Schwab rejected Acorn's offer, Acorn offered employment to Carter and several analysts from IA. (*Id.* at P 7.) The analysts declined the offer, but Carter accepted it. (*Id.* at PP 7-8.)

### III. Carter's Actions at the Behest of Acorn

Schwab alleges that on the weekend prior to October 18, 2004, Carter accessed approximately 15,000 of its computer files. (*Id.* at P 8.) Schwab had furnished Carter with access to proprietary information, but required that Carter agree to keep such information confidential. (*Id.* at PP 26-27.) Further, Schwab alleges that it restricts access to information on a "need-to-know" basis, and that Carter had no reason to access this information for the purposes of his employment at Schwab. (*Id.* at PP 8, 26.)

On October 18, 2004, Carter e-mailed confidential information to Acorn concerning data sources that IA used [*4] in its research. (*Id.* at P 8.) On October 21, 2004, Carter arrived at Schwab with a laptop computer capable of burning large amounts of information onto DVDs. (*Id.* at P 9.) Schwab alleges that Carter, acting at the direction or on behalf of Acorn, used the computer to copy Schwab's proprietary business models. (*Id.*) On October 22, 2004, Carter resigned from Schwab. (*Id.* at P 11.) Schwab alleges that Acorn paid Carter a considerable amount of money to leave Schwab prior to receiving his severance payment, and to deliver Schwab's proprietary business information to Acorn. (*Id.* at P 12.) Finally, Schwab alleges that Defendants' actions caused Schwab to incur costs of at least $ 5,000 during a one-year period. (*Id.* at P 79.)

### LEGAL STANDARD

The purpose of a motion to dismiss pursuant to *Rule 12(b)(6)* is to test the legal sufficiency of a complaint, not the merits of the case. *Triad Assoc. v. Chicago Hous. Auth., 892 F.2d 583, 586 (7th Cir. 1989).* The Court will only grant a motion to dismiss if "it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).* [*5] When reviewing a motion to dismiss, the Court is restricted to reviewing the pleadings, which consist of the complaint, any attached exhibits, and the supporting briefs. *See Thompson v. Illinois Dep't of Prof'l Regulation, 300 F.3d 750, 753 (7th Cir. 2002).* In making its determination, the Court must assume the truth of the facts alleged in the pleadings, construe the allegations liberally, and view them in the light most favorable to the plaintiff. *Jet, Inc. v. Shell Oil Co., 381 F.3d 627, 629 (7th Cir. 2004).*

### ANALYSIS

### I. Language of the Statute

The CFAA is primarily a criminal statute, but it also creates a private cause of action in *Section 1030(g). Four Seasons Hotels and Resorts BV v. Consorcio Barr, S.A., 267 F.Supp.2d 1268, 1321 (S.D.Fla. 2003). Section 1030(g)* provides, in relevant part:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves one of the factors [*6] set forth in clause (i), (ii), (iii), (iv), or (v) of subsection (a)(5)(B).

*18 U.S.C. § 1030(g).* Defendants claim that this section creates a civil cause of action only for violations of *Section 1030(a)(5)(B)(i)-(v).* Because Schwab alleges a violation of *Sections 1030(a)(2)(A), (a)(2)(C),* and *(a)(4),* but not specifically *Section (a)(5)(B),* Defendants argue that Schwab has failed to state a claim upon which relief can be granted. The Court disagrees based on the plain language of the statute.

"The cardinal rule of statutory interpretation is that courts must first look to the language of the statute and assume that its plain meaning accurately expresses the legislative purpose." *United States v. Miscellaneous Firearms, Explosives, Destructive Devices and Ammunitions, 376 F.3d 709, 712 (7th Cir. 2004)* (quotation and citation omitted). *Section 1030(g)* does not

limit private causes of action to violations of *(a)(5)(B)*, but rather requires that a plaintiff suffer one of the factors listed in *(a)(5)(B)(i)-(v)* to state a claim under the statute. *Sections 1030(a)(5)(B)(i)-(v)* list five possible harms that a party might suffer as a result of [*7] conduct forbidden by the CFAA. None of the subsections includes any action or behavior that is prohibited. Instead, the subsection lists possible harmful results of violations of other parts of the statute.

In fact, *Section 1030(g)* defines that a civil action may be established when a "violation of this section" results in any of the "factors" listed in *Section 1030(a)(5)(B)(i)-(v)*. "This section" refers to *Section 1030*. See *I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc., 307 F.Supp.2d 521, 526 (S.D.N.Y. 2004)* ("*Section 1030(g)* affords a civil action for any CFAA violation"); *Four Seasons, 267 F.Supp. 2d at 1322* (recognizing claim under *Section 1030(a)(5)(A)*). The factors listed in *Section 1030(a)(5)(B)(i)-(v)* include "loss to one or more persons during any 1-year period...aggregating at least $ 5,000 in value." See *18 U.S.C. § 1030(a)(5)(B)(i)*.

Here, Schwab alleges that Acorn induced Carter to copy computer information, resign from Schwab, and take up employment with Acorn, delivering the copied information to Acorn. Schwab also alleges that it incurred costs of at least $ 5,000 during a one-year period. [*8] As such, Schwab has properly alleged a civil cause of action under the CFAA.

## II. Purpose of the CFAA

Despite the plain meaning of the statute, Defendants assert that the CFAA is only an anti-hacking statute that was not meant to create a federal private cause of action for misappropriation of confidential information or trade secrets. When possible, the Court determines Congressional intent from the unambiguous language of the statute. See *Miscellaneous Firearms, 376 F.3d at 712.* As discussed above, the language of *Section 1030(g)* unambiguously creates a cause of action under the CFFA not restricted to *Section 1030(a)(5)(B)(i)-(v)*. "Where the meaning of a statute is unambiguous, our sole task is to apply it straightforwardly to the facts at issue without referring to legislative history or other devices." *United States v. Jones, 372 F.3d 910, 913 n.2 (7th Cir. 2004)*. Accordingly, the Court need not delve into the Congressional record as Defendants suggest.

Further, although Defendants argue that the statute should be narrowly construed as an "anti-hacking" statute, they do not explain why Carter's unauthorized access to Schwab's confidential [*9] information on its computer system and distribution of this information is not "hacking." Indeed, several district courts have recognized that damage caused by unauthorized access or access in excess of authorization to a computer system may be redressed under the CFAA. For instance, Chief Judge Charles Kocoras recognized that a plaintiff stated a claim under the CFAA when it alleged that the defendant had exceeded his authorized access and acquired trade secrets that were later used to the detriment of the plaintiff. See *George S. May Int'l Co. v. Hostetler, 2004 U.S. Dist. LEXIS 9740, No. 04 C 1606, 2004 WL 1197395, *3 (N.D. Ill. May 28, 2004)*. In *Four Seasons Hotel*, the Southern District of Florida acknowledged a claim under the CFAA when a licensee accessed the plaintiff's computer system without authorization. See *267 F.Supp. 2d at 1323-4*. In addition, a district court in the Western District of Washington determined that a former employer properly stated a claim under the CFAA when it alleged that a former employee had sent e-mails including trade secrets and proprietary information to a competitor while still employed by the plaintiff. See *Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc., 119 F.Supp. 2d 1121, 1124 (W.D. Wash. 2000)*; [*10] see also *Pacific Aerospace & Electronics, Inc. v. Taylor, 295 F.Supp. 2d 1188, 1195 (E.D. Wash. 2003)* ("Caselaw supports an employer's use of the CFAA's Civil Remedies to sue former employees and their new companies who seek a competitive edge through wrongful use of information from the former employer's computer system"). In sum, these cases further support the Court's conclusion that Schwab has properly alleged a civil cause of action under *Section 1030(g)*.

## III. Rule of Lenity

Finally, Defendants contend that the Court should apply the rule of lenity, and construe any ambiguity in the language of the statute in their favor. The rule of lenity dictates that when a statute's language is "grievously" ambiguous, the court should construe the statute in favor of the accused. *Chapman v. United States, 500 U.S. 453, 462-463, 111 S. Ct. 1919, 1926, 114 L. Ed. 2d 524 (1991)*. Because the Court concludes that there is no ambiguity in the language of the statute, the rule of lenity does not apply.

CONCLUSION

For these reasons, the Court denies Defendants' motion to dismiss Count VI.

Dated: February 11, 2005

ENTERED

AMY J. [*11] ST. EVE

United States District Court Judge

# Exhibit 3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
CASE NO. 08 C 1519
AFFIDAVIT OF SPECIAL PROCESS SERVER

**Justin Turner**, being first duly sworn on oath deposes and says that he served process in the above mentioned cause.
That he served the within:

( ) Summons & Complaint
( ) Citation to Discover Assets
( ) Rule to Show Cause
( ) Subpoena
( X ) Other: **Summons; AMFM Broadcasting, Inc.'s Verified Complaint for Emergency Injunctive and Other Relief; AMFM Broadcasting, Inc.'s Emergency Motion for Temporary Restraining Order and Preliminary Injunction; Plaintiff's Motion for Limited, Expedited Discovery and to Preserve Evidence; Notice of Motions**

1.    ( ) By leaving a copy with the named party, ------- personally on -------.

2.    ( ) On the within named party, -------, by leaving a copy with -------, -------, who states that they are a member of the household on -------, and informed that person of the contents thereof, and that further he mailed a copy of same in a sealed envelope with postage prepaid addressed to the party on -------.

3.    ( X ) On the within party, **Citadel Broadcasting Corporation c/o CT Corp., R.A.** by leaving a copy with **Dawn Schulz, Service of Processor and Authorized Person**, on **March 14, 2008**, and informed that person of the contents thereof.

4.    ( X ) That the sex, race and approximate age of the person with whom he left the documents were as follows:

SEX: **Female**         RACE: **Caucasian**         APPROXIMATE AGE: **50**

5.    ( X ) That the place where and the time of day when the documents were served were as follows:

PLACE: **208 S. LaSalle St., Suite #814, Chicago, IL 60604**
TIME OF DAY: **3:20 PM**

6.    ( ) That he was unable to serve the within named party ------- located at -------- for the reason: -------

Signed and Sworn to before me
This **17**th day of **March 2008**.

OFFICIAL SEAL
FELICIA CONROY
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:11/19/11

Justin Turner
Special Process Server
IT'S YOUR SERVE, INC.
Private Detective No. 117-000885

AO 440  (Rev. 05/00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF ILLINOIS

SUMMONS IN A CIVIL CASE

AMFM Broadcasting, Inc., a Delaware
Corporation, d/b/a Clear Channel,

Plaintiff,

V.

Rebecca Osowiec, an Illinois resident, and
Citadel Broadcasting Corporation, a Nevada
Corporation,

Defendant.

CASE NUMBER:

ASSIGNED JUDGE:

DESIGNATED
MAGISTRATE JUDGE:

# 08 C 1519

### JUDGE ZAGEL
### MAGISTRATE JUDGE DENLOW

TO: (Name and address of Defendant)

Citadel Broadcasting Corporation
208 South LaSalle Street
Suite 814
Chicago, Illinois  60604

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Yvette A. Heintzelman
Justin K. Beyer
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois  60603

an answer to the complaint which is herewith served upon you, within _____20_____ days after service of this
summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time
after service.

**Michael W. Dobbins, Clerk**

*Cynthia Mercado*

----------------------------------------
**(By) DEPUTY CLERK**

March 13, 2008
----------------------------------------
Date

AO 440  (Rev. 05/00)  Summons in a Civil Action

## RETURN OF SERVICE

| Service of the Summons and complaint was made by me[1] | DATE |
|---|---|
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

G  Served personally upon the defendant. Place where served: _____

_____

G  Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: _____

G  Returned unexecuted: _____

_____

_____

G  Other (specify): _____

_____

_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____        _____
                  *Date*                          *Signature of Server*


                                   _____
                                            *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

# Exhibit 4

[object]                                                                    Page 1 of 1



Home | Order Entry | Tracking | Reports | Logout | Support | Comments

# Chicago Messenger Service

| Service Information | | Charges | |
|---|---|---|---|
| Service Type | HURRIER | Base | $7.45 |
| Vehicle Type | BIKE | SUR1 | $0.00 |
| Pcs | 1 | SUR2 | $0.00 |
| Weight | 1 | SUR3 | $0.00 |
| Pickup Time | 16:53 | Total | $7.45 |
| POD Time | 16:59 | | |
| POD Name | T Suizs S&R | Printer Friendly Version | |
| Status | DLVD | Printer Friendly with Label | |

**Detail View**

| | |
|---|---|
| Job Number | 2091972I |
| Job Date | 03-14-2008 |
| Client Number-Matter Number-Attorney | 53163-013-HEINTZEL |
| Caller | DON |
| **Pickup Information** | |
| Pickup Name | SEYFARTH SHAW FAIRWTHR & GRLDS |
| Pickup Address | 131 S DEARBORN ST |
| Pickup City | CHICAGO |
| **Delivery Information** | |
| Delivery Name | CITADEL BROADCASTING |
| Delivery Address | 190 N STATE ST |
| Delivery City | CHICAGO |

Job Date    Job Number    Reference Number    Pickup Name    Delivery Name

© Copyright 2001-2007 by Chicago Messenger Service, Inc.