### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| AMFM Broadcasting, Inc., a Delaware Corporation, d/b/a Clear Channel | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 08 CV 1519 |
| v. | ) ) ) | Honorable Judge James B. Zagel |
| Rebecca Osowiec, an Illinois resident, and Citadel Broadcasting Corporation, a Nevada Corporation. | ) ) ) ) | Magistrate Judge Morton Denlow |
| Defendants. | ) ) | |

## AMFM BROADCASTING, INC.'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff AMFM Broadcasting, Inc. (collectively "Clear Channel" or "Plaintiff"), by its undersigned counsel, hereby files its Reply to Defendants' Opposition to Plaintiff's Motion for a Temporary Restraining Order. In support of this Reply, Plaintiff states as follows:

1.      During the course of Defendants' arguments before the Court on April 8, 2008, Defendants' counsel made reference to the Court's discretion to "blue pencil" Clear Channel's non-compete agreement with Osowiec. Such argument is inappropriate considering the law and the facts of this particular case.

2.      Under Illinois law, blue penciling a non-compete agreement is only appropriate where: "a contractual covenant contains both reasonable and unreasonable restrictions, excessive or unreasonable portions may be disregarded or severed from the remainder and the reasonable restrictions may be enforced." *Jak Prods., Inc. v. Wiza*, 986 F.2d 1080, 1087 (7th Cir. 1993); *see also Joy v. Hay Group, Inc.*, 02 C 4989, 2003 WL 22118930, * 10 (N.D. Ill. 2003) ("In deciding

whether to modify an unreasonable agreement or to simply find it unenforceable, a court should consider the fairness of the restraint initially imposed") (attached hereto as Ex. A).

3.      To determine whether an agreement is a "candidate for modification under the blue pencil doctrine, the court considers the covenant's degree of unreasonableness." *Joy*, 2003 WL 22118930, * 10.  To determine the reasonableness of an agreement, a court should look at the geographical area, scope of activity restricted, and time of restriction to determine reasonableness. *Id.*

4.      In this particular case, as set forth in Clear Channel's motion for a temporary restraining order, the restrictions contained in Osowiec's non-compete agreement are reasonable under Illinois law.  (Pl.'s Mot. for TRO at 14 – 16); *see also Joy*, 2003 WL 22118930, * 10 (two-year restraint found reasonable); *Hamer Holding Group v. Elmore*, 202 Ill. App. 3d 994, 1009, 560 N.E.2d 907, 917 (2d Dist. 1990) (75-mile radius of Chicago found reasonable in terms of geographical area).

5.      Under the terms of Clear Channel's non-compete agreement, which as a matter of record Osowiec reviewed, signed, and understood, Osowiec would be free to return to print media where she worked before her tenure at Clear Channel, or any other marketing agency in Chicago.  Osowiec was merely prohibited from working in the radio or television advertising market in the Chicagoland area.[1]

6.      Second, and perhaps more importantly, Citadel and Osowiec have not shown that they are even willing to respect and abide by the current orders of this Court.  As both Dan Manilla and Rebecca Osowiec testified before the Court on April 7, 2008, despite the Court's

---

[1] Importantly, Osowiec was not even prohibited from soliciting these clients or competing against Clear Channel in other markets.  Osowiec was simply prohibited from plying her trade against Clear Channel in Chicago for six months.

entry and extension of the temporary restraining order prohibiting Osowiec from working at

Citadel altogether, Osowiec has continued to work at Citadel since March 17, 2008, when this

Court entered its temporary restraining order.   (See attached as Group Ex. B, this Court's Order

of March 17, 2008 and the non-compete agreement upon which the order was based.)

7.    There can be no excuse for Osowiec's employer simply ignoring a Court order

(much less an order that has been entered and continued in its current form on no less than three

separate occasions) and simply fashioning an alternative remedy, which it finds more palatable,

without notice to either the Court or Clear Channel.  Such arrogance is certainly grounds for

Clear Channel to seek a contempt citation and sanctions.  But Plaintiff Clear Channel is more

concerned that the protections afforded in the executed agreement signed by Osowiec – and

which document formed the basis for this Court's Temporary Restraining Order – be provided

per this Court's orders.[2]

8.    Accordingly, Clear Channel respectfully requests that this Court enter a

preliminary injunction prohibiting Osowiec from working at Citadel in any capacity, ordering

expedited written and oral discovery to take place, and setting this matter over for a permanent

injunction hearing to take place at the earliest convenience, or for whatever remedy this Court

deems just and equitable.

---

[2] The linchpin of Defendants' argument is that having misrepresented that Osowiec was going to work for a competitor, thereby causing a delay in discovery of that fact, Osowiec and Citadel should now be rewarded for such deception.  Citadel's deliberate refusal to recognize the Court's authority to direct its conduct *vis a vis* Osowiec's employment undermines any argument that Citadel can be trusted to employ her in any capacity.

The secret refusal to abide by this Court's clear order until incidental disclosure at end of a full adverse hearing is an integral part of the presumptuousness of the Defendants' business philosophy and conduct.  The deliberate violation of this Court's orders alone is enough to warrant a permanent injunction in this case.

-3-

**DATED: April 9, 2008**

Respectfully submitted,
AMFM BROADCASTING, INC.


By:_____ /s/  Yvette A. Heintzelman_____
                    One of Its Attorneys

Yvette A. Heintzelman
Christopher A. Garcia
Justin K. Beyer
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois 60603
(312) 460-5000

-4-

## CERTIFICATE OF SERVICE

The undersigned, one of the attorneys for AMFM Broadcasting, Inc., hereby certifies that

a true and correct copy of the foregoing AMFM BROADCASTING, INC.'S REPLY TO

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY

RESTRAINING ORDER was served via electronic filing on April 9, 2008 to:

> Susan M. Benton
> Sean Nash
> Winston & Strawn LLP
> 35 West Wacker Drive
> Chicago, Illinois 60601

> /s/ Yvette A. Heintzelman
> One of AMFM Broadcasting's attorneys

CH1 11454354.1

# Exhibit A

Westlaw.

Not Reported in F.Supp.2d                                                      Page 1
Not Reported in F.Supp.2d, 2003 WL 22118930 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

▷

**Joy v. Hay Group**, Inc.
N.D.Ill.,2003.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
Lynn A. JOY, Plaintiff,
v.
HAY GROUP, INC., a Delaware corporation, and
HG (Bermuda) Limited, a Bermuda limited liability
company, Defendants.
**No. 02 C 4989.**

Sept. 11, 2003.

Luke DeGrand, Tracey L. Wolfe, Luke DeGrand &
Associates, P.C., Chicago, IL, for Plaintiff.
William Allen Woolley, Colby Anne Kingsbury,
Kirkland & Ellis LLP, Mark Clarke Fedota,
Christina S. Vasilatos, Fedota, Childers & May,
P.C., Chicago, IL, Hope A. Cornisky, Pepper,
Hamilton & Scheetz, Philadelphia, PA, David Jef-
frey Stagman, Katten Muchin Zavis Rosenman,
Chicago, IL, Michael I. Verde, Michael F. Gallagh-
er, Katten Muchin Zavis Rosenman, New York,
NY, for Defendants.

*MEMORANDUM OPINION AND ORDER*

GUZMAN, J.
*1 Plaintiff, Lynn A. Joy, has filed written objec-
tions, pursuant to Fed. R. Civ. Proc. 72, to Magis-
trate Judge Schenkier's Report and Recommenda-
tion ("R & R") entered on March 6, 2003. In his R
& R Magistrate Judge Schenkier considered a mo-
tion for preliminary injunction filed by Plaintiff
against Defendant, HG (Bermuda) Limited, a Ber-
muda limited liability company ("HGB"), seeking
injunctive relief in connection with alleged non-
competition obligation. In addition, Magistrate
Judge Schenkier considered a motion to dismiss for
lack of personal jurisdiction pursuant to Fed. R.
Civ. Proc. 12(b)(2) and a motion to dismiss for im-
proper venue pursuant to Fed. R. Civ. Proc

, both filed by Defendant HGB against Plaintiff.
Magistrate Judge Schenkier recommended that this
Court deny the motion for preliminary injunction as
well as the motions to dismiss for lack of personal
jurisdiction and improper venue. Specifically, he
recommended that these motions be denied without
prejudice. For the reasons set forth below, this
Court accepts Magistrate Judge Schenkier's R & R
in part and modifies it in part.

*BACKGROUND FACTS*

This matter arises out of Ms. Joy's employment
with and subsequent termination from Hay Group,
Inc. ("HGI"), her employment agreement in con-
nection with that position, the requirement that she
purchase shares as part of her employment
with HGI, and the shareholders agreement in con-
nection with that mandatory investment. Ms. Joy
was hired to work for HGI on April 26, 1996 and
was terminated from HGI on April 9, 2002.
(Compl.¶¶ 6-7.) As a term of her employment with
HGI, Joy was required to purchase shares of the
Bermuda entity HGB. (*Id.* ¶ 37.)In connection with
that purchase, Joy executed a shareholders agree-
ment, which included a non-competition clause.
(*Id.*) It is this non-competition clause and the dis-
agreements over its interpretation that prompted
Plaintiff to request a preliminary injunction prohib-
iting HGB from interfering with, or committing any
acts that would be detrimental to, Plaintiff's pro-
posed employment in the insurance industry as a
seller of corporate-owned life insurance as a finan-
cing vehicle. Plaintiff has also requested a declarat-
ory judgment that such employment does not viol-
ate the non-competition obligation undertaken in
the shareholders agreement.

Also included in the shareholders agreement was a
choice of law clause designating Bermuda law as
the law governing "any matter or claim arising out
of this Agreement" and a forum selection clause
which gives exclusive jurisdiction and venue to the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22118930 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Bermuda courts in the case of a matter brought by any party against the company (HGB). (Compl., Ex. D "Shareholders Agreement," Article XXII, Section 22.1 entitled "Governing Law" "This Agreement shall be governed by and construed in all respects in accordance with the laws of Bermuda as regards any matter or claim arising out of this Agreement or Bye-laws.") Defendant has filed a motion to dismiss for lack of personal jurisdiction and a motion to dismiss for improper venue. First, Defendant contends that HGB does not have the requisite contacts with Illinois in order to give this Court personal jurisdiction over HGB. Second, Defendant contends that regardless of whether this Court may exercise personal jurisdiction over HGB, the forum selection clause in the shareholders agreement is a valid and enforceable clause and Bermuda is the proper venue for resolution of the plaintiff's claim against HGB. Third, Defendant asserts that even if the Court finds that this matter should remain in this jurisdiction, this Court should honor the choice of law expressly chosen by the parties in the Agreement.

### DISCUSSION

*2 When written objections are filed regarding a magistrate judge's R & R, the district court is required to conduct a *de novo* review of those portions of the R & R at which specific objections are aimed. *See* 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b). Nevertheless, *de novo* review does not require a *de novo* hearing; the district court is not required to conduct another hearing to review the magistrate judge's findings and credibility determinations. *See United States v. Raddatz,* 447 U.S. 667, 675, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Goffman v. Gross,* 59 F.3d 668, 671 (7th Cir.1995); *United States v. Severson,* 49 F.3d 268, 273 (7th Cir.1995). Rather, the district court has discretion to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(B) (2002). If the district court is satisfied with the magistrate judge's findings and recommendations, it may in its discretion treat those findings and recommendations as its own. *Raddatz,* 447 U.S. at 675.

### A. Rule 12(b) Motions to Dismiss

As Magistrate Judge Schenkier pointed out, there are two threshold issues raised by the defendant, HGB. Those are whether this Court: (1) has personal jurisdiction over the defendant and (2) is a proper venue for this dispute. These are threshold issues because they pertain to whether this case should be here at all. Since judicial economy encourages determination of the proper forum as early as possible, these threshold issues will be addressed first. *See Frietsch v. Refco, Inc.,* 56 F.3d 825, 830 (7th Cir.1995).

### 1. Personal Jurisdiction

The first threshold issue is defendant's motion to dismiss for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2). It is the Plaintiff's burden to make a prima facie showing of personal jurisdiction. *See, e.g., Central States & Southwest Areas Pension Fund v. Reimer Express World Corp.,* 230 F.3d 934, 939 (7th Cir.2000); *Kohler Co. v. Kohler Int'l, Ltd.,* 196 F.Supp.2d 690, 695 (N.D.Ill.2002); *Quantum Color Graphics, LLC v. Fan Ass'n Event Photo GmbH,* 185 F.Supp.2d 897, 902 (N.D.Ill.2002). In analyzing personal jurisdiction, the Court considers all facts in the complaint as true unless refuted by the defendant in an affidavit. *Jones v. Sabis Educ. Sys., Inc.,* 52 F.Supp.2d 868, 883 (N.D.Ill.1999). Once a fact is challenged by an affidavit from the defendant, the plaintiff has an obligation to provide an additional affidavit supporting his or her contention. *Id.* In the end, all disputed facts will be resolved in the plaintiff's favor. *See Logan Productions, Inc. v. Optibase, Inc.,* 103 F.3d 49, 52 (7th Cir.1996).

Magistrate Judge Schenkier came to the conclusion that the complaint and the affidavit submitted by Plaintiff are sufficient to create a prima facie case of personal jurisdiction. However, while the magis-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 3
Not Reported in F.Supp.2d, 2003 WL 22118930 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

trate judge recommended that Defendant's motion to dismiss be denied, he recommended that it be denied without prejudice. It is this aspect of the recommendation to which Plaintiff objects. (Pl.'s Objections R & R ¶ 2.) Plaintiff asserts that "allowing the motion to be renewed at the close of discovery will unduly prejudice" her. (*See id.*)Plaintiff also cites *Quantum Color Graphics, LLC v. Fan Ass'n Event Photo GMBH* to support her argument that discovery should not be necessary in a case where the moving defendant has not submitted evidence that controverts Plaintiff's allegations regarding jurisdiction. 185 F.Supp.2d at 902. While this Court agrees with Magistrate Judge Schenkier that the plaintiff made a prima facie showing of personal jurisdiction, the Court finds Plaintiff's objections with regard to this issue meritorious and modifies the R & R accordingly. For the reasons set forth below, the defendant's motion to dismiss for lack of personal jurisdiction will be denied *with prejudice.*Personal jurisdiction is such a basic threshold issue that it needs to be resolved as early in the dispute as possible. *See Frietsch,* 56 F.3d at 830. Defendant had the chance to refute the allegations of jurisdiction contained in the complaint and the Plaintiff's affidavit by submitting its own affidavit and it chose not to do so. Therefore, taking the allegations as true and drawing all reasonable inferences in the plaintiff's favor, Plaintiff has established personal jurisdiction. *Quantum Color,* 185 F.Supp.2d at 905.

**\*3** This Court has personal jurisdiction over a nonresident defendant who has not consented to jurisdiction only if a court of the state in which it sits would have personal jurisdiction. Fed.R.Civ.P. 4(k)(1); *see Central States,* 230 F.3d at 939;*Jones,* 52 F.Supp.2d at 883. An Illinois state court has personal jurisdiction when the Illinois long-arm statute, the Illinois state constitution and the due process clause of the federal constitution authorize it. *See, e.g., Central States,* 230 F.3d at 939;*Quantum Color,* 185 F.Supp.2d at 902;*Jones,* 52 F.Supp.2d at 883.

Here, Plaintiff alleges this Court has jurisdiction over Defendant under two sections of the Illinois long-arm statute. The long-arm statute provides for jurisdiction over a person for cause of action arising from ... (1) transacting "any business within this State;" (7) making or performing "any contract or promise substantially connected with this State."735 ILL. COMP. STAT. 5/2-209(a). Plaintiff alleges that Defendant transacted business within, and made and performed contracts substantially connected with, Illinois. (Compl.¶ 3.) Sections (1) and (7) of the Illinois long-arm statute are generally linked and analyzed together. *Promero, Inc. v. Mammen,* No. 02 C 1191, 2002 WL 31455970, at \*4 (N.D.Ill. Nov.1, 2002) (citing *Presley v. P & S Grain Co.,* 289 Ill.App.3d 453, 460, 225 Ill.Dec. 398, 683 N.E.2d 901 (5th Dist.1997)). There are four factors at which Illinois courts look to determine whether a defendant has transacted business in Illinois for the purposes of personal jurisdiction: (1) who initiated the transaction; (2) where the contract was entered into; (3) where the performance of the contract was to take place; (4) where the contract was negotiated. *Promero,* 2002 WL 31455970, at \*4 (citing *Viktron Ltd. P'ship v.. Program Data Inc.,* 326 Ill.App.3d 111, 117-18, 259 Ill.Dec. 706, 759 N.E.2d 186 (2d Dist.2001)). Since Plaintiff asserts that there were no negotiations for the shareholders agreement, the Court considers the first three factors only. (Pl.'s Reply Supp. Mot. Injunctive Relief, Ex. B, Joy Aff. ¶ 3.)

First, with regard to who initiated the transaction, Plaintiff asserts that her transaction with HGB was an obligation related to her employment with HGI, a subsidiary of HGB. (Compl. ¶ 37; Joy Aff. ¶¶ 4, 6, 7.) Her affidavit states:
As part of my employment with HGI, I was provided in Illinois, and instructed to sign, the shareholders agreement ... HG Bermuda forwarded the shareholders agreement to me in Illinois. All information regarding HG Bermuda, my investment and the shareholders agreement, was forwarded by the Company to me in Illinois.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 4
Not Reported in F.Supp.2d, 2003 WL 22118930 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

(*Id.*) It seems, and it is not refuted by an affidavit from the defendant, that HGB initiated the transaction once they were notified of her employment with HGI. This weighs in favor of finding jurisdiction in Illinois. Second, in regard to where the contract was entered into, there is no information in the record regarding who signed the contract on behalf of HGB or where that signing took place. However, Plaintiff has provided information concerning her signing of the contract. Plaintiff's affidavit states:*4 All negotiations regarding the terms of my employment and the execution of all documents related to my employment occurred within Illinois ... Although the HG Bermuda shareholders agreement and/or bye-laws were not subject to negotiation, I signed all documents related to HG Bermuda within Illinois (where they were presented to me) ... The HG Bermuda shareholders agreement was executed by me in Illinois. As part of my employment with HGI, I was provided in Illinois, and instructed to sign, the shareholders agreement.

(Joy Aff. ¶¶ 2-4.) Because Defendant has provided no information regarding its entrance into the contract, the Court considers this factor to weigh in favor of finding jurisdiction in Illinois as well. Third, as for where performance of the contract was to take place, Plaintiff's affidavit states that, "[a]ll of my performance of the shareholders agreement occurred in Illinois."(Joy Aff. ¶ 5.) Defendant, on the other hand has offered nothing with regard to its obligations under the shareholders agreement or where those obligations were to take place. In sum, all the factors weigh in favor of finding jurisdiction over defendant in Illinois based on 5/2-209(a)(1), the Illinois long-arm statute's "transaction of business" clause. *See Promero,* 2002 WL 31455970, at *6. Consequently, the uncontroverted statements in the complaint and Plaintiff's affidavit will be taken as true and analyzed next, according to the Illinois state constitution and the due process clause of the federal constitution to determine whether this Court has personal jurisdiction over the defendant. *See, e.g., Central States,* 230 F.3d at 939;*Quantum Color,* 185 F.Supp.2d at 902;*Jones,* 52 F.Supp.2d at

883.

While the Illinois Supreme Court has offered little guidance as to how state due process differs from federal due process in the personal jurisdiction context, it has explained that jurisdiction is to be asserted over a non-resident "only when it is fair, just, and reasonable to require a nonresident to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois."*Rollins v. Ellwood,* 141 Ill.2d 244, 275, 152 Ill.Dec. 384, 565 N.E.2d 1302 (1990); *see Kohler Co. v. Kohler Int'l, Ltd.,* 196 F.Supp.2d at 695;*Quantum Color,* 185 F.Supp.2d at 902;*Jones,* 52 F.Supp.2d at 883. HGB argues that Plaintiff cannot satisfy this burden. However, it has supplied no affidavits to refute the facts alleged in the complaint and Plaintiff's affidavits. "[U]nless the allegations in the complaint are self-defeating or the defendant[ ] come[s] forward with factual evidence to challenge jurisdiction, [the court] must draw all reasonable inferences consistent with the complaint in favor of the plaintiff."*Quantum Color,* 185 F.Supp.2d at 904. Plaintiff's affidavit states:
All negotiations regarding the terms of my employment and the execution of all documents related to my employment occurred within Illinois....Although the HG Bermuda shareholders agreement and/or bye-laws were not subject to negotiation, I signed all documents related to HG Bermuda within Illinois (where they were presented to me)....The HG Bermuda shareholders agreement was executed by me in Illinois. As part of my employment with HGI, I was provided in Illinois, and instructed to sign, the shareholders agreement. All of my performance of the shareholders agreement occurred in Illinois....HG Bermuda forwarded the shareholders agreement to me in Illinois. All information regarding HG Bermuda, my investment and the shareholders agreement, was forwarded by the Company to me in Illinois.

*5 (Joy Aff. ¶¶ 2-7.) Taking those allegations as true and drawing all reasonable inferences in favor

Not Reported in F.Supp.2d                                                      Page 5
Not Reported in F.Supp.2d, 2003 WL 22118930 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

of the plaintiff, it seems that the "quality and nature" of HGB's acts that affect interests in Illinois (Plaintiff, HGI, its own subsidiary, and presumably other employees of HGI) are sufficient to subject HGB to jurisdiction under the Illinois Constitution. *Kohler Co. v. Kohler Int'l, Ltd.,* 196 F.Supp.2d at 696.

The Court also finds that its exercise of jurisdiction over the defendant meets the due process requirements of the U.S. Constitution. To comply with due process requirements, two factors must be satisfied. First, the defendant must have "minimum contacts" with the forum: "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Second, the assertion of jurisdiction must "not offend 'traditional notions of fair play and substantial justice." ' *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). Once the minimum contacts test is satisfied, the burden is upon the defendant to show that jurisdiction would not be consistent with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz,* 471 U.S. at 477.

Here, Plaintiff has satisfied the test for minimum contacts. For specific jurisdiction, the Court looks at whether the "defendant 'has purposefully established minimum contacts within the forum State' and consider[s] whether, by traditional standards, those contacts would make personal jurisdiction reasonable and fair under the circumstances."*Kohler Co. v. Kohler Int'l, Ltd.,* 196 F.Supp.2d at 696 (quoting *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1277 (7th Cir.1997)) (internal quotations omitted). It seems that Defendant should have reasonably anticipated being haled into court in Illinois. Not only does HGB have a subsidiary with at least one office in Illinois, but it makes an effort to transact business with the em-

ployees of that subsidiary who have no choice but to be a party to the transaction. It also sends all paperwork and correspondence to the employees in Illinois, so the employees are conducting their end of the transactions entirely within this state. In addition, the dispute "arises out of" specific acts of Defendant HGB in the state as required.

However, Defendant has offered no compelling evidence why jurisdiction in Illinois would be unreasonable. Defendant has not refuted the statements in the complaint or Plaintiff's affidavits that clearly set out HGB's connections with this state. Therefore, jurisdiction in Illinois complies with the due process requirements of the U.S. Constitution.

*2. Venue*

Defendant's motion to dismiss for improper venue is based on the forum selection clause contained in the shareholders agreement [FN1] and is properly brought under Fed.R.Civ.P. 12(b)(3).*Frietsch,* 56 F.3d at 830;*Paper Express, Ltd. v. Pfankuch Maschinen GmbH,* 972 F.2d 753, 754 (7th Cir.1992); *Ashenden v. Lloyd's of London,* No. 96 C 852, 1996 WL 717464, at *5 (N.D.Ill.Dec.9, 1996). Defendant contends that even if the Court should find it has personal jurisdiction over HGB, the forum selection clause in the shareholders agreement should act to "trump" that jurisdiction and place this case in the hands of the Bermuda courts. In the past, forum selection clauses were considered *per se* invalid because they attempted to oust one court of its jurisdiction. *M/S Bremen v.. Zapata Off-Shore Co.,* 407 U.S. 1, 9, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). However, the landmark decision in *Bremen* changed the general view of forum selection clauses. *Cross v. Schneider Fin., Inc.,* No. 01 C 90, 2001 WL 1558297, at *6 (N.D.Ill.Dec.4, 2001); *Clinton v. Janger,* 583 F.Supp. 284, 288 (N.D.Ill.1984). Since *Bremen,* forum selection clauses have been generally considered valid unless proven to be unreasonable, and the party resisting enforcement of the clause bears the burden to prove its unreasonableness. *Cross,* 2001 WL 1558297, at

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 6
Not Reported in F.Supp.2d, 2003 WL 22118930 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

*6;*Clinton,* 583 F.Supp. at 288.

> FN1. The shareholders agreement provides: "The Company may exercise its rights against any Shareholder, including all rights in regard to the undertakings of each Shareholder against competition, in any jurisdiction in which such Shareholder may be served or found. In respect of any matter brought by any Party concerning this Agreement or the Company against or prejudicial to the Company or any Officer or Shareholder of the Company, such Party hereby irrevocably submits and agrees to the exclusive jurisdiction and the venue of the Bermuda courts."(Compl., Ex. D, Article XXII, Section 22.1.)

*6 In determining whether a contractual clause, a forum selection clause in this case, is unreasonable, this Court as well as the Illinois state courts have considered six factors: (1) which law governs the formation and construction of the contract, (2) the residency of the parties involved, (3) the place of execution and/or performance of the contract, (4) the location of the parties and witnesses participating in the litigation, (5) the inconvenience to the parties of any particular location, and (6) whether the clause was equally bargained for. *Cross,* 2001 WL 1558297, at *7;*Clinton,* 583 F.Supp. at 289. In reviewing the factual record with regard to these six factors, it is clear that there is not enough evidence at this point to make a determination as to the reasonableness of the Forum selection clause. Consequently, for the reasons set forth below, the Court agrees with Magistrate Judge Schenkier that the consideration of the reasonableness of the clause will be more effective and efficient after discovery.

The first *Clinton* factor is the governing law of the contract. 583 F.Supp. at 289. The analysis of this factor is complicated by the choice of law provision contained in the shareholders agreement and the lack of factual evidence in the record to determine whether that choice of law provision should be enforced. The provision reads: "This Agreement shall be governed by and construed in all respects in accordance with the laws of Bermuda as regards any matter or claim arising out of this Agreement or the Bye-laws."(Compl. Ex. D, Shareholders Agreement § 22.1.) In addressing the question whether the parties' choice of law is valid and enforceable, the Court must apply the forum state's choice of law rules. *See, e.g., Fulerum Fin. Partners v. Meridian Leasing Corp.,* 230 F.3d 1004, 1011 (7th Cir.2000); *Kohler v. Leslie Hindman, Inc.,* 80 F.3d 1181, 1184-85 (7th Cir.1996); *Curtis 1000, Inc. v. Suess,* 24 F.3d 941, 943 (7th Cir.1994). Generally, in contract disputes, Illinois law respects the contract's choice of law clause as long as the contract is valid and the law chosen is not contrary to Illinois fundamental public policy. *See, e.g., Fulerum,* 230 F.3d at 1011;*Vencor, Inc. v. Webb,* 33 F.3d 840, 844-45 (7th Cir.1994). In this case, the Court must determine whether Bermuda law or Illinois law applies. As stated below in the preliminary injunction discussion, it is unclear, according to the Bermuda law supplied by the parties,[FN2] whether Bermuda and Illinois law even differ on the subject of non-competition agreement analysis. Consequently, it is difficult to determine whether Bermuda law would be "against Illinois public policy" on the issue of non-competition agreements. On one hand, if Bermuda law and Illinois law do not differ, Bermuda law certainly would not be against Illinois public policy. On the other hand, if Bermuda law does differ from Illinois law, the choice of law provision could possibly be against Illinois public policy.[FN3] However, Magistrate Judge Schenkier touched on another issue concerning the choice of law provision. He, along with both parties, cited the Seventh Circuit case, *Curtis 1000, Inc. v. Suess,* 24 F.3d 941, 943 (7th Cir.1994). The *Curtis* case also concerned a non-competition agreement and a choice of law provision. In that case, the Seventh Circuit decided not to honor the parties' designation of Delaware law because there was insufficient connection between the contract and the State of Delaware. *Curtis,* 24 F.3d at 948. The Court explained that "businesses incorporate in Delaware in order to take advantage of that state's corporation

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22118930 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Page 7

law, and its judicial expertise concerning corporate governance, rather than to conduct business there."*Id.* at 948. In other words, the company had incorporated in Delaware but had no other connections there. *Id.* Therefore, Delaware would not have been a proper forum for the suit to take place. *Id.* There is a possibility that we have a similar situation with HGB. While the complaint states that HGB was organized under the laws of Bermuda and its principal place of business is located in Bermuda, it is still unclear whether any meaningful activities take place in, or whether any offices or employees are located in, Bermuda. HGB is simply a holding company. Its business consists of buying and holding subsidiaries which are located around the world-one of which is HGI, headquartered in Philadelphia with an office in Illinois. Moreover, the shareholders agreement to which Plaintiff is a party is directly linked to her employment at HGI, which took place in Illinois. Thus, until it can be determined what connections HGB really has with the chosen forum and whether Bermuda law and Illinois law differ on the issue of the covenant, the Court is unable to determine whether the choice of law provision is enforceable. Therefore, the governing law element of the *Clinton* analysis is not helpful.

> FN2. The only Bermuda common law supplied by the parties is inapplicable in this employee-employer context.

> FN3. Because one of the factors of the preliminary injunction analysis is likelihood of success on the merits, it will be necessary to determine whether or not the non-competition agreement is enforceable. If, for example, the non-competition agreement would not be enforceable under Illinois law, but it would be enforceable under Bermuda law, the choice of law provision could be deemed "against Illinois public policy."

*7 The second *Clinton* factor, the residency of the parties, is more technical. Plaintiff is a resident of Illinois and according to the shareholders agreement, HGB holds its "residence" in Bermuda. (Compl.¶ 2.) However, as referenced above, there is still a question as to HGB's actual presence in Bermuda. Until that is more clear, the Court is unable to determine how much HGB's Bermuda residency will weigh in its favor on this issue.

The third *Clinton* factor is the place of execution/performance of the contract. Unfortunately, the evidentiary record is lacking on this issue as well. The record does show that Plaintiff signed the agreement in Illinois and her duties under the agreement were to take place in Illinois, since that was where she worked for one of HGB's subsidiaries. (Joy Aff. ¶¶ 3-5 .) We have no information, however, about who signed the agreement on behalf of HGB and where it was signed. Additionally, we have no information about HGB's duties under the agreement and where they were to take place.

The evidentiary record for the fourth *Clinton* factor, the location of the parties and witnesses, is equally bare. Not only is the plaintiff located in Illinois, she says the witnesses are also located in Illinois since this litigation is regarding her employment in Illinois. (Pl.'s Reply Supp. Mot. Injunctive Relief, at 17). However, the Bermuda-based defendant says there are witnesses located in Bermuda as well. *Id.* As Magistrate Judge Schenkier pointed out, both parties are very willing to proclaim where witnesses are located, but neither party has supported its proclamations with names and addresses of any witnesses. It is difficult to weigh the witness convenience factor when the record is devoid of more specific details of how many witnesses are in each location and the significance of their roles in this dispute.

The fifth *Clinton* factor is inconvenience to the parties. Again, the parties have not given the Court much to consider regarding this issue. Each party has simply stated that their preferred forum would be more convenient for them and not too much of a burden on the opponent. There are no explanations as to what inconveniences there would be to litigate

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 8
Not Reported in F.Supp.2d, 2003 WL 22118930 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

in the other party's chosen forum. There are no specific evidentiary submissions that explain why one place would be more convenient than the other. Consequently, the Court lacks concrete evidence as to convenience.

The last *Clinton* factor is whether the clause was equally bargained for. With regard to this element, there is some helpful evidence in the record. There is an affidavit from the plaintiff which states she did not have a chance to negotiate before she signed the shareholders agreement. (Joy Aff. ¶ 2.) Further, she argues that because the agreement was ancillary to her employment agreement, she had no choice but to sign it. (Joy Aff. ¶ 4.) While HGB says the shareholders agreement was bargained for in their brief, there are no affidavits or evidentiary submissions to support that statement. Accordingly, this Court accepts Magistrate Judge Schenkier's view of this issue-that the forum selection clause was not bargained for.

*8 The above discussion illustrates the absence of sufficient evidence in the record to make an adequate determination as to the reasonableness of the forum selection clause. The plaintiff has objected to Magistrate Judge Schenkier's recommendation to deny Defendant's motion to dismiss for improper venue without prejudice and to allow HGB to renew this motion after the opportunity for more factual discovery. (Pl.'s Objections R & R, ¶ 5.) Plaintiff contends that HGB "failed to make the requisite evidentiary showing to support its motion (which evidence was, again, uniquely within its control)" and for that reason, the motion should have been denied with prejudice. *Id.* However, the burden is not upon the defendant here, but upon the plaintiff to establish that the venue she has chosen is proper. *Promero,* 2002 WL 31455970, at *7;*Cross,* 2001 WL 1558297, at *1-2. In fact, the burden lies with her in this case especially because not only is she the party who originally brought the action, (and so it is upon her to establish that the venue she has chosen is a proper one) but she is also the party resisting the enforcement of the for-

um selection clause in the shareholders agreement (and so it is upon her to establish that the venue selected in the forum selection clause is unreasonable).*Bremen,* 407 U.S. at 10;*Clinton,* 583 F.Supp. at 288. Since the gaping holes in the evidentiary record frustrate the analysis of the reasonableness of the forum selection clause, Magistrate Judge Schenkier felt it would be helpful to allow the parties to take discovery and revisit the analysis of this important issue once the record has been supplemented.[FN4] This Court agrees, and the defendant's motion to dismiss for improper venue is denied without prejudice.

> FN4. Rather than objecting to Magistrate Judge Schenkier's recommendation on this issue, Plaintiff should have been relieved at the "second chance" this ruling gives her to establish what it is her burden to establish.

B. *Preliminary Injunction*

Plaintiff requests a preliminary injunction in connection with her alleged non-competition obligation stemming from the shareholders agreement. As the party seeking the preliminary injunction, Plaintiff bears the burden of establishing four elements: (1) her case has some likelihood of success on the merits; (2) no adequate remedy at law exists; (3) there will be irreparable harm if the injunction is denied; and (4) the public interest weighs in favor of granting the injunction. *See, e.g., Vencor,* 33 F.3d at 845;*Budget Rent A Car Corp. v. G & M Truck Rental,* No. 03 C 2434, 2003 WL 21501784, at *2 (N.D.Ill. June 26, 2003); *Kempner Mobile Elecs., Inc. v. Southwestern Bell Mobile Sys.. LLC,* No. 02 C 5403, 2003 WL 1057929, at *55 (N.D.Ill. Mar.10, 2003). The Seventh Circuit tends to use a "sliding seale approach" in which it balances the degree of likelihood of success on the merits against the irreparable harms. *Vencor,* 33 F.3d at 845.

Thus, the more likely the moving party will succeed on the merits, the less the element of irreparable harm must weigh in its favor. Similarly, the less

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                        Page 9
Not Reported in F.Supp.2d, 2003 WL 22118930 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

likely that the party seeking the preliminary relief will have success on the merits, the greater the element of irreparable harm required to weigh the balance in its favor.

**\*9** *Id.* As explained below, it is impossible to do this balancing test effectively here, because there is not enough information in the record to adequately determine likelihood of success on the merits-an essential element to the balancing test.

In order to determine likelihood of success on the merits, it is necessary to analyze whether the covenant not to compete is enforceable and whether Plaintiff's proposed employment would actually violate the agreement. Illinois courts and federal courts applying Illinois law have frequently ruled on the enforceability of restrictive covenants. *Trailer Leasing Co. v. Assocs. Commercial Corp.,* No. 96 C 2305, 1996 WL 392135, at \*3 (N.D.Ill. July 10, 1996). However, as discussed above, the choice of law provision in the shareholders agreement complicates this analysis. While the Court has an abundance of guidance on how this covenant would be analyzed under Illinois law, it has very little guidance as to how the covenant would be viewed under Bermuda law. The defendant has provided some Bermuda case law and its interpretation of that law. However, what has been provided is not useful in this analysis because it concerns a sale of a business context. The Court agrees with Magistrate Judge Schenkier in that this situation is not parallel to a sale of a business context, but rather this covenant was contained in an agreement that was "adjunct" to her employment with HGI. Therefore the Court considers the context similar to an employer-employee situation and less like the sale of a business situation that Defendant asserts. So, with virtually no guidance from the parties on how this covenant would be handled under Bermuda law, the Court will compare the Bermuda law that it has found on its own and the Illinois law that is well-established.

Under Illinois law, the enforceability of a restrictive covenant is a question of law. *Pactiv Corp. v.*

*Menasha Corp.,* 261 F.Supp.2d 1009, 1013 (N.D.Ill.2003); *Trailer,* 1996 WL 392135, at \*3. Courts disfavor restrictive covenants entered into between an employer and employee because they are partial restraints of trade and thus, these covenants are strictly scrutinized. *See, e.g., Kempner,* 2003 WL 1057929, at \*59;*Trailer,* 1996 WL 392135, at \*3;*Eichmann v. Nat'l Hosp. & Health Care Servs., Inc.,* 308 Ill.App.3d 337, 342, 241 Ill.Dec. 738, 719 N.E.2d 1141 (1st Dist.1999). Additionally, "the fact that the parties agreed to the non-compete provisions is not dispositive, indeed, '[i]t is improper under Illinois law to enforce a non-competition clause merely because the parties agreed to such an arrangement." ' *Kempner,* 2003 WL 1057929, at \*59 (quoting *Advent Elecs., Inc. v. Buckman,* 112 F.3d 267, 274 (7th Cir.1997)). The basic test applied by Illinois courts in determining enforceability of restrictive covenants in employment settings is whether the terms of the agreement are reasonable in scope and necessary to protect a legitimate business interest of the employer. *See, e.g., Outsource Int'l, Inc. v. Barton,* 192 F.3d 662, 666 (7th Cir.1999); *Budget,* 2003 WL 21501784, at \*5. While HGB is not technically considered "the employer" in this context, the analysis is the same. Therefore, the question is: Does HGB have a legitimate business interest that requires some protection and is this restriction limited to protecting that interest without going too far and unduly burdening Plaintiff? *See Kempner,* 2003 WL 1057929, at \*60 (citing *Liautaud v. Liautaud,* 221 F.3d 981, 987 (7th Cir.2000)).

**\*10** Magistrate Judge Schenkier found, and the Court agrees, that HGB has a legitimate business interest that requires some protection. This is one of the issues to which Plaintiff objects. Ms. Joy asserts that HGB "failed to articulate a protectible [sic] interest which it ostensibly sought to serve by the restrictive covenant."(Pl.'s Objections R & R, ¶ 11.) However, it is Plaintiff's burden to show that her case has a likelihood of success on the merits and the Court finds that she has failed to establish that there was no legitimate interest. Plaintiff was, and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22118930 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

is currently, a shareholder in HGB. Obviously, HGB's business as a holding company is to try to run its subsidiaries successfully and in turn, make more money for its shareholders (Plaintiff included). Logically, one of the ways it makes more money is through its subsidiaries like the one for which Ms. Joy worked. It would seem that HGB has an interest in keeping its shareholders from competing directly with its own interests.

The next issue is whether the covenant is appropriate to protect that interest without being unreasonable and going too far in burdening the employee. *See, e.g., Outsource,* 192 F.3d at 666;*Budget,* 2003 WL 21501784, at *5. There are three areas to which this reasonableness test is applied: temporal duration, geographic area covered and scope of activity restricted. *Kempner,* 2003 WL 1057929, at *64-65;*Eichmann,* 308 Ill.App.3d at 344, 241 Ill.Dec. 738, 719 N.E.2d 1141. This covenant covers a two-year time period which seems to be reasonable under the circumstances. The geographic area covered by the restriction is unlimited. This may or may not be overly broad. "The lack of a geographical restriction does not automatically invalidate a postemployment restraint where the geographical prohibition is qualified by an activity restraint."*Eichmann,* 308 Ill.App.3d at 344, 241 Ill.Dec. 738, 719 N.E.2d 1141. In other words, a broad geographic restraint (*i.e.,* an unlimited geographic area) may be considered reasonable if the scope of the activity restriction is narrowly defined. *See id.*However, this covenant is overly broad in geographic area and scope of activity restricted. It prohibits Ms. Joy from not only competing, but also undertaking any investment in a company that competes in any way or working in any capacity for any entity that may compete.[FN5] So, on its face, this covenant is unreasonable and unenforceable as written. However, under Illinois law, a court may apply the "blue pencil doctrine" to a covenant that is unreasonable on its face. *Nobel Biocare USA, Inc. v. Lynch,* No. 99 C 5774, 1999 WL 958501, at *2 (N.D.Ill. Sept.15, 1999); *Eichmann,* 308 Ill.App.3d at 347, 241 Ill.Dec. 738, 719 N.E.2d

1141. The blue pencil doctrine allows the court, at its discretion, to modify or "blue pencil" unreasonable terms of an agreement in order to make it reasonable. *See id.*In deciding whether to modify an unreasonable agreement or to simply find it unenforceable, a court should consider the fairness of the restraint initially imposed. *Pactiv,* 2003 WL 21077856, at *16 (citing *Arpac Corp. v. Murray,* 226 Ill.App.3d 65, 79-80, 168 Ill.Dec. 240, 589 N.E.2d 640 (1st Dist.1986))."A court should refuse to modify an unreasonable restrictive covenant 'where the degree of unreasonableness renders it unfair." ' *Pactiv,* 261 F.Supp.2d at 1015 (quoting *Eichmann,* 308 Ill.App.3d at 347-48, 241 Ill.Dec. 738, 719 N.E.2d 1141). Additionally, a court deciding whether to modify an agreement should consider the severability of the provisions in the agreement-whether the provisions operate independently of each other. *Id.* at 1016, 241 Ill.Dec. 738, 719 N.E.2d 1141 (citing *Abbott-Interfast Corp. v. Harkabus,* 250 Ill.App.3d 13, 21, 189 Ill.Dec. 288, 619 N.E.2d 1337 (2d Dist.1993)). While many courts decide to apply the blue pencil doctrine and slightly modify agreements that are overly broad, courts generally try to stay away from rewriting agreements or make drastic modifications, *Id.*If, in order to make the terms of the agreement reasonable, a court would essentially have to draft a new agreement, that court would probably decline to do so. *Id.* The idea behind declining to rewrite unreasonable and unfair agreements is that courts would like to encourage employers to more narrowly draft their covenants. *Id.* at 1016-17, 189 Ill.Dec. 288, 619 N.E.2d 1337;*Roberge v. Qualitek Int'l, Inc.,* No. 01 C 5509, 20@02 WL 109360, at *20 (N.D.Ill. Jan.28, 2002); *Lee/O'Keefe Ins. Agency, Inc. v. Ferega,* 163 Ill.App.3d 997, 1007, 114 Ill.Dec. 919, 516 N.E.2d 1313 (4th Dist.1987).

> FN5. The covenant at issue provides: "Each Shareholder, by execution of this Agreement or a counterpart hereof, or by execution of a deed of adherence pursuant to Article VII hereby covenants and agrees in favour of each of the other Shareholders

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22118930 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

and the Company that he or she shall not compete with or undertake any investment or activity in competition with the business of the Company during the term of his or her status as a Shareholder of the Company or for a period of the longer of (a) two (2) years after the Shareholder ceases to be a Shareholder of the Company or (b) any period in which the Redemption Amount paid on account of a Shareholder's Preferred Shares is not yet due for payment under any deferral required or permitted as an option to the Shareholder pursuant to Article V of the Bye-laws. The provisions of this Section 10.1 shall be in addition to any provision regarding obligations not to compete or restriction upon activities after termination that may arise out of the terms of employment of an individual by the HG Group."(Compl., Ex. D, Shareholders Agreement, Article X, Section 10.1.)

**\*11** In determining whether this covenant is a candidate for modification under the blue pencil doctrine, the court considers the covenant's degree of unreasonableness. While two of the three areas of restriction appear unreasonable, i.e., geographic area and scope of activity restricted, the Court finds it would be possible to modify the terms without crossing the line into rewriting the whole agreement. The geographic area could be scaled down and/or the scope of the activity restricted could be limited without changing the parties' intentions at the time of execution. Consequently, because Illinois law would allow the court to modify and enforce the modified agreement, the next question is: Would Ms. Joy's proposed employment violate a modified agreement? While there is no dispute that her proposed employment would have her selling a product that she did not sell for HGI, the Court has not been supplied with any specific information about the product she will be selling and how it is related to the products HGI sells. It is difficult to make a determination as to whether she would be "competing," when the Court has very little back-

ground information about the products themselves, who buys the products and how sales of one affects sales of the other. In order to make a determination of whether her proposed employment would violate a modified agreement, it is necessary to consider the products more specifically. There is clearly not enough factual evidence in the record to determine the likelihood of success on the merits, which is one essential element of the preliminary injunction analysis. Therefore, because a complete analysis is not possible at this point, further analysis under Illinois law would not be useful.

Under Bermuda law, the enforceability of a restrictive covenant is analyzed in much the same way. Employment contracts are considered contracts in restraint of trade and are *prima facie* void unless justified according to the test of reasonableness. *Reitner v. Ness,* [1997] Bda LR 43 (Bermuda Supreme Court). The burden is on the party seeking to enforce the covenant to establish that it is "reasonable in the interest of the parties and reasonable in the public interest and that it is for the protection of some interest" of the company for which it "is entitled to protection." *Id.* (citing *Nordenfelt v. Maxim Nordenfelt Guns & Ammunition Co. Ltd.*[1894] A.C. 535, 565). In *Reitner v. Ness,* the Bermuda Court considered the time period restricted, area restricted and scope of activity restricted and analyzed each term to determine if the restriction was more than necessary to protect the employer's interest. [1997] Bda LR 43. Therefore, it seems that Illinois and Bermuda law are similar in that they both look disfavorably upon, and strictly scrutinize, non-compete agreements in the employment context. Most likely, under the laws of both, this covenant would be considered unreasonable on its face. However, what is unclear, is whether the courts' discretion to modify unreasonable agreements is the same under both laws. The *Reitner* case demonstrates that the "blue pencil doctrine" is a concept that is present under Bermuda law, but it is difficult to determine whether the scope of the doctrine is the same as its scope under Illinois law. It seems that the doctrine does not allow a court, under Ber-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 12
Not Reported in F.Supp.2d, 2003 WL 22118930 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

muda law, to go any further in modifying an agreement than a court, under Illinois law, would be allowed to go. *Reitner* [1997] Bda LR 43 ("Can the Court rewrite the agreement? The general principle is that the Courts will not make a new contract for the parties whether by rewriting the existing contract or by basically altering its nature."). However, what Bermuda law allows when drastic rewriting is not necessary is unclear.[FN6]

> FN6. Under Illinois law, a court may, in modifying a term of an agreement, simply change it. *See Nobel,* 1999 WL 958501, at *6. By doing that, the court is, in effect, deleting that specific term and adding a new one. What is unclear is whether, under Bermuda law, a court can "add" to the agreement. It seems to be clear that a court can delete terms that are unreasonable, but the ability to "change" is not clearly stated. It seems as though a court, under Bermuda law, may apply the blue pencil doctrine to "run through the words ... and strike out the words ...," but there is no sign of the ability to "change" the words. *Reitner,* [1997] Bda LR 43.

*12 Without being able to determine, at this point, whether Illinois law and Bermuda law differ at all on the topic of enforceability of restrictive covenants, it is difficult to come to any conclusions on the preliminary injunction issue. Without knowing whether the covenant can be modified, the Court cannot determine if it will be enforceable. Without knowing whether it will be enforceable, it is impossible to determine whether the plaintiff's proposed employment would violate it. There are too may gaps at this point. That is precisely why Magistrate Judge Schenkier recommended that the preliminary injunction be denied without prejudice. The plaintiff objects to that recommendation because "no party requested the judicial modification of the provision, and it was error for the Magistrate Judge to deny plaintiff's request on the basis of a hypothetical request that has not been made."(Pl.'s

Objections R & R, ¶ 9.) However, contrary to Plaintiff's belief that it must be requested by one of the parties, judicial modification of covenants is under the *complete* discretion of the court. *See, e.g., Roberge,* 2002 WL 109360, at *20;*Lee/O'Keefe,* 163 Ill.App.3d at 1106-07, 115 Ill.Dec. 81, 517 N.E.2d 283. A court may certainly exercise its discretion to modify or strike terms, under Illinois and Bermuda law respectively, when it has not been requested by a party just as a court may decline to exercise its discretion to modify when it has been requested by a party. Additionally, Plaintiff objects to the Magistrate Judge's recommendation because "given the breadth of the restrictive covenant at issue, the Court would essentially be re-writing the agreement, not 'blue penciling' it."(Pl.'s Objections R & R, ¶ 10.) Again, under Illinois law, a court has discretion to modify the terms of an agreement. Consequently, if the court feels, as it does in this case, it can modify the terms without going as far as rewriting the agreement, it has discretion to do so. Ultimately, this may not even be a consideration, because there are decisions that need to be made before a complete analysis of the covenant can take place. The choice of law must be decided and, should Bermuda law be chosen, further analysis of the scope of the court's ability to modify under Bermuda law is required. In sum, this Court adopts Magistrate Judge Schenkier's R & R as to this issue and Plaintiff's motion for preliminary injunction is denied without prejudice.

### C. Choice of Law

Although, choice of law is really a threshold issue, there has not been enough evidence provided by the parties to make a determination. As stated above in the venue discussion, the parties have not presented sufficient bases upon which to conclude whether the choice of law provision should be enforced. If a party should request a court to apply foreign law, it is a good idea that such party supply the applicable law.[FN7] In my own research for this case, I have discovered that it is not easy to find Bermuda law. However, assuming *arguendo* that the forum selec-

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22118930 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

tion clause is not enforced and the dispute stays in this Court, both parties need to be more thorough in their submissions as to which law should be applied. Additionally, assuming *arguendo* that the choice of law provision in the agreement is enforced, both parties need to be more thorough in their submissions regarding the analysis of the covenant under Bermuda law.

> FN7. "The Court does not take judicial notice of the law of other nations, it must be pleaded and proved by counsel." *Munsell v. La Brasserie Molson Du Quebec Limitee,* 623 F.Supp. 100, 102 (E.D.N.Y.1985); *see also Abdille v. Ashcroft,* 242 F.3d 477, 490 (3rd Cir.2001).

### CONCLUSION

*13 For the reasons set forth above, this Court adopts in part and modifies in part Magistrate Judge Schenkier's R & R. The Court denies with prejudice Defendant's motion to dismiss for lack of personal jurisdiction [doc. no. 38-1], denies without prejudice the motion to dismiss for improper venue [doc. no. 38-2], and denies Plaintiff's motion for preliminary injunction without prejudice [doc. no. 21-1] to renewal as a request for a permanent injunction after discovery.

SO ORDERED

N.D.Ill.,2003.
Joy v. Hay Group, Inc.
Not Reported in F.Supp.2d, 2003 WL 22118930 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| AMFM Broadcasting, Inc., a Delaware Corporation, d/b/a Clear Channel | ) ) ) | |
| Plaintiff, | ) ) | Case No.  08 CV 1519 |
| v. | ) ) ) | Honorable Judge James B. Zagel |
| Citadel Broadcasting Corporation, a Nevada Corporation, and Rebecca Osowiec, an Illinois resident, | ) ) ) ) | Magistrate Judge Morton Denlow |
| Defendants. | ) ) ) | |

## TEMPORARY RESTRAINING ORDER

Plaintiff AMFM Broadcasting, Inc., doing business as Clear Channel (collectively "Clear Channel") having filed a Verified Complaint for Injunctive and Other Relief, and Emergency Motion for a Temporary Restraining Order and a Preliminary Injunction, all parties being given notice, and the Court having heard the arguments of counsel and otherwise being advised in the premises;

IT IS ORDERED that Plaintiff's Motion is granted as follows:

1.  That Defendants, along with their respective agents, employers, employees, attorneys and those persons in active concert or participation with them, be temporarily and preliminary enjoined from:

> (a)  Violating, directly or indirectly, Rebecca Osowiec's Employment Agreement with Clear Channel Broadcasting, Inc., specifically the section relating to Osowiec's non-disclosure, non-competition, and non-solicitation agreement with Clear Channel;

> (b)  Misappropriating or threatening to misappropriate Clear Channel's trade secrets and confidential information and that Defendants be specially required to return to Clear Channel all trade secrets and confidential information in their possession, including all copies thereof;

CH1 11433024.1

    (c)      Revealing or utilizing Clear Channel's proprietary information, trade secrets and confidential information;

    (d)      Soliciting or attempting to provide media advertising to Broadway In Chicago, Natural Hair Growth, Paramount Theatre, and other unknown customers.

2.      That a hearing shall be held on Clear Channel's application for a preliminary injunction on _MARCH 25_, 2008 at _11 AM_.

3.      That bond shall be filed by Clear Channel in the sum of $ _10,000_.

4.      That Clear Channel is granted leave to conduct expedited discovery, including depositions, limited to the issues raised in its Verified Complaint, and that Defendants are required to respond to written discovery within three (3) days of service.

5.      This Order shall be effective until _March 27_, 2008 at _5:00 p.m._, and no longer without the further order of the Court.

JUDGE

DATED: MAR 17 2008

**Prepared By:**
Yvette A. Heintzelman
Justin K. Beyer
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois 60603
(312) 460-5000

-2-

CHI 11433024.1



# CONFIDENTIALITY, TRADE SECRETS AND NON-COMPETE AGREEMENT

The Parties to this Agreement and certain referenced elements therein are as follows.

Employer: ~~Revolution~~ *Clear Channel* WLIT  Incorporated in: _____

Corporate Headquarters: __San Antonio__

Station and City and State License: __WLIT    Chicago, IL__

Metropolitan Statistical Area(s) in which Station Competes: __Chicago__

Employee: __Rebecca Osowiec__

Employment Capacity (Job Duties): __Account Executive__

This Agreement is entered into by and between, the above-referenced "Employee" and the above-referenced "Employer." Employee is entering into employment with or is currently employed by Employer at the above-referenced Station in the above-referenced capacity.

During the term of this agreement, Employee will have access to and become familiar with various trade secrets and confidential information and techniques of Employer. Employee acknowledges that such confidential information and techniques, and trade secrets are owned and shall continue to be owned solely by Employer. During the term of his/her employment, and after such employment terminates, Employee agrees not to use such information for any purpose whatsoever or to divulge such information to any person other than Employer or person to whom Employer has given its consent. Under no circumstances shall Employee remove from Employer's office any of Employer's books, records, format materials, documents, or customer lists, or any copies of such documents without the written permission of Employer; nor shall Employee make any copies of such books, records, materials, documents, or customer lists for use outside of Employer's office except as specifically authorized in writing by Employer.

Employee agrees that in consideration of his/her employment or continued employment with Employer, training in Employer's techniques, access to confidential trade secrets or Employer's expenditure of money and energy in advertising, training, promoting or dissemination of information about Employee or various programs in which Employee may participate. Employee does hereby agree that during his/her employment with Employer in the capacity above stated or otherwise and for a period of one hundred eighty (180) days thereafter, he/she shall neither engage directly or indirectly in the rendering of services similar to those provided for Employer nor have any direct or indirect interest in or employment relationship with any radio or television station (including cable organization or supplier) or firm or affiliated company owning or operating a radio or television station or cable system located within or purporting to serve the above-referenced Metropolitan Statistical Area(s), as defined by the US Government, other than properties operated by Employer. The parties have attempted to limit Employee's right to compete only to the extent necessary to protect Employer from unfair competition. The parties recognize, however, that reasonable people may differ in making such a determination. Consequently, the parties hereby agree that, if the scope or enforceability of the restrictive covenant is in any way disputed at any time, a court may modify and enforce the covenant to the extent that it believes to be reasonable under the circumstances existing at that time. In the event Employee violates the restrictive covenant set forth above, it is agreed that the term of the restrictive covenant so violated shall be extended for a period of one hundred eighty (180) days from the time Employee ceases such violation or, in the event of court action, for a period of one hundred eighty (180) days after the entry of a final order or judgment.

Employee further acknowledges that in the event his/her employment with Employer terminates for any reason, he/she will be able to earn a livelihood without violating the foregoing restrictions and that his/her

ability to earn a livelihood without violating such restrictions is a material condition to his/her employment with Employer.

Employee acknowledges that compliance with the covenants previously set forth herein is necessary to protect the business and good will of Employer and that a breach of those covenants will irreparably and continually damage Employer, for which money damages may not be adequate. Consequently, Employee agrees that in the event he/she breaches or threatens to breach any of these covenants, Employer shall be entitled to both a preliminary or permanent injunction in order to prevent the continuation of such harm and money damages insofar as they can be determined.

Nothing is this agreement, however, shall be construed to prohibit Employer from also pursuing any other remedy, the parties having agreed that all remedies shall be cumulative. As such money damages for the period of time during which Employee violated these covenants, Employer shall be entitled to recover the amount of fees, compensation or other remuneration earned by Employee as a result of any such breach. If in one or more instances either party fails to insist that the other party perform any of the terms of this agreement, such failure shall not be construed as a waiver by such party of any past, present or future right granted under this agreement; the obligations of both parties under this agreement shall continue in full force and effect.

The obligations contained in the preceding paragraphs shall survive the termination of this agreement. In addition, the termination of this agreement shall not affect any of the rights or obligations of either party arising prior to or at the time of the termination of this agreement, or which may arise by any event causing the termination of this agreement.

If any provision, paragraph or subparagraph of this agreement is adjudged by any court to be void or unenforceable in whole or in part, this adjudication shall not affect the validity of the remainder of the agreement including any other provision, paragraph, or subparagraph. Each provision, paragraph and subparagraph of this agreement is separable from every other provision, paragraph and subparagraph, and constitutes a separate and distinct covenant.

This agreement shall be binding upon and shall inure to the benefit of the parties and their successors, assigns, executors, administrators, and personal representatives. This agreement constitutes the complete understanding between the parties, all prior representations or agreements having been merged into this agreement. No alteration or modification to any of the provisions of this agreement shall be valid unless made in writing and signed by both parties. This agreement shall be subject to and governed by the laws of the above-referenced State. If Employee breaches any of the terms of this agreement, the Employee shall pay to Employer all of Employer's costs and expenses, including attorney's fees, incurred by Employer in enforcing the terms of this agreement.

Employee agrees and acknowledges that this agreement is not a contract for employment or continued employment and does not place any obligations upon Employer except as specifically stated herein.

"EMPLOYER"                                              "EMPLOYEE"

By: _Mary P On_____                    Signature: _Rebecca Daniel_

Its: _12/12/06_____                          Date: _5/8/06_