UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMFM BROADCASTING, INC., <br><br> Plaintiff, <br><br> v. <br><br> REBECCA OSOWIEC, *et al.*, <br><br> Defendants. | No. 08 C 1519 <br> Judge James B. Zagel |

**MEMORANDUM OPINION AND ORDER**

**I.    BACKGROUND**

In this case, Rebecca Osowiec left her job selling radio advertising for Clear Channel and went to work for another Chicago radio station, this one owned by Citadel. At the time she began her employment with Clear Channel, Ms. Osowiec signed a non-compete agreement ("Agreement") in which she agreed that, for 180 days after her employment with Clear Channel ended, she would not work for any radio or television station in the greater Chicago area (Chicagoland).

Following Ms. Osowiec's departure—and the commencement of her employment with a Citadel-owned station—Clear Channel initiated this suit, seeking, among other things, injunctive relief. Clear Channel wanted to enforce the non-compete agreement Ms. Osowiec had signed. On March 17 I imposed a temporary restraining order (TRO) and set a hearing for the following week on Clear Channel's application for a preliminary injunction. I held a substantive hearing on April 8 and 9, at which I heard from several witnesses, including Ms. Osowiec. At this time, I deny further extension of the TRO.

II. **STANDARDS FOR INJUNCTIVE RELIEF TO ENFORCE NON-COMPETE AGREEMENTS**

In order to be entitled to injunctive relief,[1] Clear Channel must show that: (1) it has a protectible interest, such as near-permanent customer relationships or confidential information; (2) no adequate remedy at law exists; (3) it will suffer irreparable harm if the injunction is not granted; and (4) there is a likelihood it will succeed on the merits. *Appelbaum v. Appelbaum*, 823 N.E.2d 1074, 1081 (Ill. App. Ct. 2005) (*citing Lyle R. Jager Agency, Inc. v. Stewart*, 625 N.E.2d 397 (1993)). I also must consider whether the balance of hardships supports granting injunctive relief. *See Keefe-Shea Joint Venture v. City of Evanston*, 773 N.E.2d 1155 (Ill. App. Ct. 2002).

III. **PLAINTIFF HAS REASONABLE LIKELIHOOD OF SUCCESS ON ESTABLISHING THAT THERE IS A PROTECTIBLE INTEREST**

Illinois courts recognize two ways in which a party can establish that it has a protectible business interest:[2] "(1) it can show the employee acquired the party's confidential information

---

[1] Illinois law applies. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). I first look to the state legislature and the state supreme court's interpretation of its own statutes. *Erie*, 304 U.S. at 78; *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001).

[2] In a special concurring opinion in *Lifetec Inc. v. Edwards*, 880 N.E.2d 188 (Ill. App. Ct. 2007), Judge Steigmann discusses the enforceability of restrictive covenants. After accurately stating the law in Illinois, he argues that the "legitimate business interest" test is inconsistent with recent Illinois Supreme Court decisions. 880 N.E.2d at 201 (Steigmann, P.J., concurring). Judge Steigmann opines that "courts at any level, when presented with the issue of whether a restrictive covenant should be enforced, should evaluate only the time and territory restrictions contained therein. If the court determines that they are not unreasonable, then the restrictive covenant should be enforced." *Id.* at 204 (Steigmann, P.J., concurring). Of course, as Chief Judge Easterbrook has written: "Under *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the federal court's task is not to make an independent decision but to predict how the Supreme Court of [Illinois] would understand and apply its own law." *Intec USA, LLC v. Engle*, 467 F.3d 1038, 1040 (7th Cir. 2006). Judge Steigmann's well-reasoned approach notwithstanding, I hesitate to predict that the Supreme Court of Illinois would abandon the test

2

and attempted to use that information for his own benefit; or (2) it can show it has a near-permanent relationship with its customers, and but for his employment with the party, the employee would not have had access to those customers." *Office Mates 5, North Shore, Inc. v Hazen*, 599 N.E.2d 1072 (Ill. App. Ct. 1992).

While it is a somewhat close call, I find that Plaintiff has shown a sufficient likelihood of success on the existence of a legitimate business interest. I determine that Plaintiff establishes that it has near-permanent relationship with its customers, in part because I credit the testimony from Clear Channel's employees stating that 70% of their customers are repeat business.[3] In addition, I find that Ms. Osowiec acquired Clear Channel's confidential information, in the form of training methods, pricing data, and operation.

In sum, I find that Plaintiff has shown a sufficient likelihood of success on the question of protectible interest under the existing standard. *But see Springfield Rare Coin Galleries, Inc. v. Mileham*, 620 N.E.2d 479, 488 (Ill. App. Ct. 1993) ("[A] near-permanent relationship with customers is generally absent from businesses engaged in sales . . . . [and] is not generally present in a business which does not engender customer loyalty by providing a unique product or personal service, and customers of the business utilize many suppliers simultaneously to meet their needs."). While I conclude that Plaintiff has carried its burden at this preliminary stage, this is this is by no means a determination about whether Plaintiff's case is proved.

---

used by every district of the appellate court in Illinois for decades. Moreover, I find that Plaintiff has established its burden under the existing test, the approach for which Judge Steigmann advocates would only favor Plaintiff further.

[3]I recognize that the customers' fidelity may be to the programming format as opposed to the radio station, but again, Plaintiff has done enough to establish it burden at this preliminary stage.

## IV. IRREPARABLE HARM / INADEQUATE LEGAL REMEDY

I find that Plaintiff has carried its burden on both the irreparable harm and the inadequate legal remedy prongs because Clear Channel's loss of customer relationships cannot be quantified.

## V. BALANCE OF HARDSHIPS

I find that the balance of hardships cuts in favor of Defendants; it is on this basis that I decline to extend the TRO.  Ms. Osowiec was a relatively low level employee whose share of customer relationships was fairly small.  Her knowledge of the details of pricing methods has—even according to the testimony of Plaintiffs' witnesses—substantially expired and continues to expire rapidly.  According to both the terms of the agreement and the testimony of Plaintiff's witnesses, the effective life span of the information Ms. Osowiec possesses is at most 26 weeks following her departure.

So there is relatively little harm to Plaintiff if I err in denying equitable relief.  Conversely, if I erroneously grant injunctive relief, Citadel will have to divert its human resources into supervising and monitoring Ms. Osowiec's work.  If, alternatively, it discharges Ms. Osowiec, she will have been deprived of a significant employment opportunity that may not be available in the future.

I do not consider Ms. Osowiec's financial loss.  Nor do I consider any pecuniary loss Citadel may suffer if it believes that it has a moral obligation to pay her.  These harms do not constitute irreparable damage.

I conclude that the balance of hardships weighs in favor of Defendants.  It is not clear whether this suit is driven by a concern that what Defendants have done damages Plaintiff's

protectible interest, as opposed to a desire to forfend the poaching of employees. When Plaintiff's counsel began her argument at the hearing, among the first things she said was that Citadel entered the market in 2007 whereas Clear Channel has been a market participant since 2000. She went on to bemoan the fact that Citadel has poached multiple of Clear Channel's employees. I am hesitant to say that the poaching of employees constitutes the requisite protectible interest to warrant injunctive relief. *See Hanchett Paper Co. v. Melchiorre*, 792 N.E.2d 395, 400 (Ill. App. Ct. 2003) (holding that covenants not to compete are strictly construed to ensured that their intended effect is not to prevent competition *per se*). I cannot say that the public interest weighs strongly on either side. That is, the public interest will not be implicated by granting or denying equitable relief.

### VI. CONCLUSION

Weighing everything, while I preliminarily determine that a protectible interest does exist, I do not accord great weight to the relative value of that interest. Nor can I say that there is an exceptionally high probability of success on the merits. Weighing this against the balance of harms, which favors Defendants, I exercise my discretion to deny further extension of the TRO.

This ruling does not constitute a vacation of the TRO that was previously granted in this case.

ENTER:

*James B. Zagel*
James B. Zagel
United States District Judge

DATE: April 11, 2009