**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| AMFM BROADCASTING, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 08-CV-1519 |
| | ) |
| CHICAGO FM RADIO ASSETS, LLC, | ) Hon. James B. Zagel |
| incorrectly captioned as | ) |
| CITADEL BROADCASTING CORPORATION | ) Magistrate Judge Morton Denlow |
| and REBECCA OSOWIEC | ) |
| | ) |
| Defendants. | ) |

## VERIFIED ANSWER TO COMPLAINT

Defendants, CHICAGO FM RADIO ASSETS, LLC, incorrectly captioned as CITADEL

BROADCASTING CORPORATION and REBECCA OSOWIEC bring this Verified Answer

and state as follows:

## NATURE OF THE ACTION

1.      This is an action for an emergency injunction and damages arising out of
Osowiec's unauthorized entry into Clear Channel's computer system and her removal from Clear
Channel of its highly confidential and proprietary information in violation of the law. Clear
Channel seeks to enjoin Osowiec to return to Clear Channel its confidential information, to
enjoin Osowiec from utilizing or disclosing Clear Channel's confidential and proprietary
information, and to enjoin Osowiec from working in a capacity in which she threatens to or will
utilize or disclose Clear Channel's confidential and proprietary information. Clear Channel also
seeks all damages it has suffered as a result of Osowiec's and Citadel's actions and monies for
Clear Channel's efforts to recover its proprietary information and forensically investigate and
recover electronic files removed and/or destroyed by Osowiec.

**ANSWER:**     Defendants admit that this is an action for injunctive relief and damages.

Defendants deny the remainder of paragraph 1.

## PARTIES JURISDICTION AND VENUE

2.    AMFM Broadcasting, Inc. (d/b/a Clear Channel) is a Delaware corporation with its corporate headquarters and principal place of business located in San Antonio, Texas. AMFM Broadcasting, Inc. owns six radio stations in Chicago.

**ANSWER:**    Defendants admit the allegations in paragraph 2.

3.    Osowiec was recently employed at Clear Channel's radio station of WLIT FM as an Account Manager and is currently employed by Citadel in the same capacity.  On information and belief, Osowiec is domiciled at and resides at 12528 Anand Brook Drive, Orland Park, IL 60467 and is an Illinois citizen.

**ANSWER:**    Defendants admit the allegations in paragraph 3

4.    Citadel Broadcasting Corporation is a Nevada corporation with its corporate headquarters and principal place of business located in New York, New York. One of Citadel's affiliates is located in Chicago, Illinois at 190 North State Street, 8th Floor.

**ANSWER:**    Defendants admit that the principal place of business of Citadel Broadcasting Corporation ("Citadel") is located in New York and that one of Citadel's affiliates is located at the above list address.  Defendants deny the remainder of paragraph 4 and specifically deny that Citadel is a proper party to this action.

5.    This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, based on a claim arising under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.,* and supplementary jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367. This Court also has original jurisdiction over this action under 28 U.S.C. § 1332 because the parties are citizens of different states and the matter in controversy exceeds $75,000.00, excluding interest and costs. This Court has personal jurisdiction over Osowiec and Citadel and venue is proper in this District and this Division under 28 U.S.C. § 1391(a), because Osowiec was employed here, conducted business here, has breached and threatens to breach duties to Clear Channel in this District, and because Citadel's tortious acts were committed against Clear Channel in this District.

**ANSWER:**    Defendants deny the allegations in paragraph 5.

## STATEMENT OF FACTS

6.    AMFM Broadcasting, Inc., doing business as Clear Channel or Clear Channel Communications, Inc., is a Delaware corporation with its corporate headquarters and principal

place of business in San Antonio, Texas. Clear Channel provides entertainment, information products, and services to communities and effective solutions to advertisers in those communities. Clear Channel's assets include radio stations, television stations, and outdoor advertising formats, such as signs and billboards, through which it sells advertising time and access to its customer base. Clear Channel has six radio stations located in Chicago, Illinois. Clear Channel's parent corporation, Clear Channel Broadcasting. Inc., and sister companies reach more than 110 million listeners each week with over 1,100 locally-operated and locally - programmed radio stations in the U.S. With its international partners, Clear Channel's parent owns and operates more than 240 radio stations in Australia, Mexico, and New Zealand. Clear Channel's parent's Premier Radio Networks unit syndicates more than 70 programs to more than 5,000 radio affiliates, including Rush Limbaugh, Dr. Laura, Jim Rome and Carson Daly. Clear Channel's parent has affiliations, which include NBC, ABC, CBS, FOX, MyNetworkTV, The CW and Telemundo.

**ANSWER:**     Defendants admit the allegations in paragraph 6.

7.     In June 2007, Citadel acquired ABC Radio, Inc.'s holdings, including WZZN FM and WLS AM in Chicago and various radio stations in New York. Prior to that time, Citadel had no presence in the Chicago radio market or the radio advertising market.

**ANSWER:**     Defendants admit the allegations in paragraph 7.

8.     Since that time, Citadel has begun poaching its account executives, including Jaclvn Savier and Rebecca Osowiec in Chicago and Jose Tones, Lou Carpino, Adam Gross and Anthony Campbell in New York City, New York. In total, Citadel has recently employed six Clear Channel Account Executives between the Chicago and New York markets.

**ANSWER:**     Defendants deny Plaintiff's characterization of the above hirings as

"poaching." Defendants admit that Citadel hired the above named individuals.

9.     Each of the six former Clear Channel employees all had signed a Confidentiality Agreement with Clear Channel as a condition of their employment with Clear Channel. Based on Clear Channel's communications with Citadel, Citadel knew or should have known that it was not permitted to hire these employees for a span of six months after the end of their employment. In spite of this knowledge, Citadel, on information and belief, has undertaken a systematic and repeated attempt to poach Clear Channel's business and customers, namely by hiring Clear Channel's account executives responsible for business Citadel later solicited. On information and belief Citadel has encouraged Clear Channel's former employees to misappropriate and used Clear Channel's confidential information for Citadel's gains and Clear Channel's detriment.

**ANSWER:**     Defendants deny the allegations in paragraph 9.

## CLEAR CHANNEL'S CONFIDENTIAL AND PROPRIETARY
## INFORMATION

10.    Clear Channel has invested substantial time and money gathering and developing confidential and proprietary information concerning its markets, services, clients, and its clients' customer base.  Because of its vast presence in radio, television, and outdoor advertising, Clear Channel's confidential and other proprietary information is unique and sets it apart from its competitors in the marketplace. The competitive nature of the radio, television, and advertising industry is such that Clear Channel greatly depends on maintaining and preserving its confidential information and trade secrets to maintain its competitive edge.

**ANSWER:**    Defendants deny the allegations in paragraph 10.

11.    Clear Channel's confidential and proprietary information currently includes proprietary software systems called Radio Fusion and Best Rate, and, until November 2007, Tapscan. Radio Fusion is a program that manages and schedules all advertising for various radio stations by date, time, and listener base for up to a year.  Radio Fusion contains information used by Clear Channel's Account Executives to create effective, market-based proposals targeting specific clients. Such analysis includes client identity and contact information, historical purchases made by clients, products, benefits, pricing, advertising/marketing schedules, event sponsorships, promotional events, and television campaigns for the near future.  Radio Fusion provides detailed client profiles based upon historical data that defines the relationship between Clear Channel and its specific client base. Osowiec had access to Radio Fusion during her employment at Clear Channel.

**ANSWER:**    Defendants denies the allegations in paragraph 11.

12.    Best Rate is a software program incorporated into Radio Fusion. Best Rate employs an algorithm to create a pricing system used by Clear Channel to sell advertising to its clients on the various radio stations it owns. Best Rate incorporates historical information including, but not limited to, costs, product development, date and time of day, time slot and amount of time, historical data, and forecasting. This software system not only determines the rates that should be charged, it alerts personnel to sales that are outside the desired parameters or when actual sales are not aligned with sales targets.  Clear Channel's pricing strategy information is extremely valuable and directly effects its competitive position in the marketplace. Osowiec had access to and used Best Rate while she was employed at Clear Channel.

**ANSWER:**    Defendants admit that Osowiec had access to Best Rate while she was

employed at Clear Channel and deny the remaining allegations in paragraph 12.

13.    Tapscan was a scheduling program, utilized by Clear Channel until November 2007, when it was replaced by Radio Fusion. Through Tapscan, Clear Channel's employees could access scheduling information and various market rates and ad space scheduling for particular clients of any of Clear Channel's six Chicago radio stations.  Osowiec had access to

and used Tapscan while she was employed by Clear Channel.

     **ANSWER:**   Defendants admit the allegations in paragraph 13.


    14.    Clear Channel also maintains information concerning Non Traditional Revenue ("NTR") sources.  NTR includes information on Clear Channel's internet capabilities and event marketing.  This information is maintained on the "N" Drive and is accessible only to individuals who need the information, such as Account Executives and higher-ranking management officials. Osowiec had access to the N Drive while she was employed at Clear Channel.

     **ANSWER:**   Defendants admit that Osowiec had access to the N Drive while she was

employed at Clear Channel but lacks sufficient information to admit or deny the remainder of

the allegations in paragraph 14 and, therefore, deny them.

### CLEAR CHANNEL PROTECTS ITS CONFIDENTIAL INFORMATION

    15.    Clear Channel requires that its information be kept strictly confidential by its employees and restricts access to this information. Clear Channel takes specific measures to preserve the confidentiality of this information, including but not limited to, the following:

       a.    Clear Channel requires employees to sign Employment Agreements containing covenants designed to maintain confidentiality and to return Clear Channel property upon termination;

       b.    Clear Channel requires its employees to maintain confidentiality of Clear Channel information and protect Clear Channel's assets;

       c.    Clear Channel requires files to be maintained in locked cabinets and cleared from desks when not in use;

       d.    Clear Channel prohibits the use of Clear Channel time, materials or facilities not directly related to Clear Channel business, or the removal or borrowing of Clear Channel property without permission;

       e.    Clear Channel uses swipe cards to restrict access to and within Clear Channel's facilities;

       f.    Clear Channel prohibits the use of Clear Channel's computer systems for non-company purposes; and

g.    Clear Channel restricts access to its computerized information through the use of passwords.

**ANSWER:**    Defendants lack sufficient knowledge to admit or deny the allegations in

Paragraph 15 and, therefore, deny them.

16.    Clear Channel rigorously maintains the confidentiality of its information because the information provides Clear Channel a competitive advantage in the marketplace from which Clear Channel derives economic value.

**ANSWER:**    Defendants deny the allegations in paragraph 16.

17.    Clear Channel's confidential information is of great value to Clear Channel and would give any competitor of Clear Channel - including Osowiec and her new employer, Citadel - an unfair competitive advantage. A competitor could use Clear Channel's information to unfairly develop competing products and processes, unfairly improve its products through [sic], obtain regulatory approvals for process changes and products developed through the expenditure of Clear Channel's time and resources, unfairly price its products, move business and/or long standing customer relationships away from Clear Channel, and obtain a head start or streamline its research and development efforts.

**ANSWER:**    Defendants deny the allegations in paragraph 17.

18.    Clear Channel enjoys long-standing, near permanent relationships with many of its customers.

**ANSWER:**    Defendants deny the allegations in paragraph 18.

19.    Only as a result of her position at Clear Channel, Osowiec received and was given access to extensive confidential and proprietary information of the type described herein.

**ANSWER:**    Defendants deny the allegations in paragraph 19.

## OSOWIEC'S OBLIGATIONS OWED TO CLEAR CHANNEL

20.    On May 8, 2006, as a condition of, and as consideration for Osowiec's employment by Clear Channel, Osowiec was required to review and sign Clear Channel's Confidentiality, Trade Secrets and Non-Compete Agreement. *(See* Confidentiality, Trade Secrets and Non-Compete Agreement (the "Agreement"), attached hereto as Ex. 1.)

**ANSWER:**    Defendants admit that Osowiec signed the Agreement described in

paragraph 20.  Defendants deny that said Agreement is valid and binding under Illinois law.


21.    Also, pursuant to Clear Channel's employment requirements and her corresponding obligation, Osowiec received and reviewed both a Code of Conduct (the "Code") and an Employee Guide (the "Guide") designed to outline Clear Channel's requirements and Osowiec's duties and rights in the employment relationship, and to protect Clear Channel's legitimate business interest in its confidential and proprietary information and customer relationships. *(See* Code and Guide, attached hereto as Ex. 2 & Ex. 3, respectively.) On October 16, 2006, also as a condition of and in consideration for Osowiec's employment by Clear Channel, Osowiec signed an acknowledgment form indicating that she received the Code and Guide. *(See* Acknowledgment form, attached hereto as Ex. 4.)

   **ANSWER:**    Defendants deny the allegations in paragraph 21.


22.    The Agreement was designed to protect Osowiec's and Clear Channel's interests in the employment relationship, and to protect Clear Channel's legitimate business interest in its confidential and proprietary information and customer relationships.

   **ANSWER:**    Defendants deny the allegations in Paragraph 22.


23.    The Agreement provides as follows:

> Employee agrees that in consideration of his/her employment or continued employment with Employer, training in Employer's techniques, access to confidential trade secrets or Employer's expenditure of money and energy in advertising, training, promoting or dissemination of information about Employee or various programs in which Employee may participate, Employee does hereby agree that during his/her employment with Employer in the capacity above stated or otherwise and for a period of one hundred eighty (180) days thereafter, he/she shall neither engage directly or indirectly in the rendering of services similar to those provided for Employer nor have any direct or indirect interest in or employment relationship with any radio or television station (including cable organization or supplier) or firm or affiliated company owning or operating a radio or television station or cable system located within or purporting to serve the above-referenced Metropolitan Statistical Area(s), as defined by the U.S. Government, other than properties operated by Employer. The parties have attempted to limit Employee's right to compete only to the extent necessary to protect Employer from unfair competition. The parties recognized, however, that reasonable people may differ in making such a determination. Consequently,

the parties thereby agree that, if the scope or enforceability of the restrictive covenant is in any way disputed at any time, a court may modify and enforce the covenant to the extent that it believes to be reasonable under the circumstances existing at that time. (n the event Employee violates the restrictive covenant set forth above, it is agreed that the term of the restrictive covenant so violated shall be extended for a period of one hundred eighty (180) days from the time Employee ceases such violation or, in the event of court action, for a period of one hundred eighty (180) days after the entry of a final order or judgment.

Employee further acknowledges that in the event his/her employment with Employer terminates for any reason, he/she will be able to earn a livelihood without violating the foregoing restrictions and that his/her ability to earn a livelihood without violating such restrictions is a material condition to his/her employment with Employer.

Employee acknowledges that compliance with the covenants previously set forth herein is necessary to protect the business and good will of Employer and that a breach of those covenants will irreparably and continually damage Employer, for which money damages may not be adequate. Consequently, Employee agrees that in the event he/she breaches or threatens to breach any of these covenants, Employer shall be entitled to both a preliminary or permanent injunction in order to prevent the continuation of such harm and money damages insofar as they can be determined.

**ANSWER:**    Defendants admit the allegations in paragraph 23.

24.    The Guide and Code also set forth various requirements under which Osowiec was to protect Clear Channel's confidential information. These requirements included, but were not limited to, Osowiec maintaining the confidentiality of Clear Channel's:

- Business promotion strategies and plans (these may be in writing, communicated orally, or exist as a matter of practice or custom).

- Proposals to clients or potential clients, including information compiled or prepared to assist with proposals to clients or potential clients.

- Client lists or prospective (e.g., "target") client lists.

- Client requests (whether presented orally or in writing) for

information, proposals, promotional assistance, or other information, which relates to Clear Channel or to the client.

- Event or potential event information, including dates, locations, costs, ticket prices, on-sale information, ticket price determination formulas, methods, strategies, or variations.

- Information regarding other employees and their employment with Clear Channel, including personal information that employees learn in the course of their job duties.

- Information regarding the talents, skills, abilities, and work experience of other employees.

- Computer hardware, software, or computer-related information, whether purchased or created by or on behalf of Clear Channel; as used or applied to Clear Channel's business.

- Information, which pertains - directly or indirectly - to contemplated or actual business relationships between Clear Channel and businesses that engage in activities related to Clear Channel business, e.g., promoters, advertising or marketing firms, etc.

- The identity of consultants, vendors, or other third parties that provide or seek to provide services to Clear Channel, together with the nature of any such services.

- Personal information regarding non-employees, which is obtained through Clear Channel's promotional activities (such as information regarding Internet website visitors, contest winners, email newsletter subscribers, etc.).

**ANSWER:**   Defendants admit that the Guide and Code set forth various requirements as stated above.  Defendants deny that such information is confidential, proprietary or trade secret under Illinois  law.

25.     The Guide also contains a policy that prohibits the dissemination of Clear Channel's confidential and trade-secret information through use of electronic communications.

**ANSWER:**     Defendants admit that the Guide contains a policy described in paragraph 25, but deny that the information is confidential, proprietary or trade secret under Illinois law.

26.     Moreover, every time an employee accesses any Clear Channel computer system, Clear Channel reminds the employee that the information stored on its computers are the property of Clear Channel through a warning message.

**ANSWER:**     Defendants lack sufficient information to admit or deny the allegations in Paragraph 26 and, therefore, deny them.

27.     Upon separation from Clear Channel, network access is terminated immediately and any passwords given to access Clear Channel's computers and systems are disabled to prevent any further access.

**ANSWER:**     Defendants lack sufficient information to admit or deny the allegations in Paragraph 27 and, therefore, deny them.

## OSOWIEC'S EMPLOYMENT AT CLEAR CHANNEL

28.     Rebecca Osowiec ("Osowiec") was hired by Clear Channel on May 5, 2006 as an Account Executive.

**ANSWER:**     Defendants admit the allegations in paragraph 28.

29.     As an Account Executive, Osowiec was responsible for meeting local business owners and advertising agency representatives, in order to build relationships, and selling all Clear Channel assets as marketing solutions to help clients meet their key business challenges. The essential duties of an Account Executive is to maintain existing business relationships while striving to increase billing and market share; attract new business accounts and sponsorships for the employee's home station, as well as Clear Channel; develop and maintain ongoing relationships with corporate, advertising, and public relations communities; develop presentations to corporations and agencies designed to sell marketing solutions; solicit funding for broadcast and non-broadcast projects, special events web-streaming, and other oft-air projects; maintain ability to analyze client marketing analysis, target consumer needs, benefits sought, assignments; develop and sell new accounts.

**ANSWER:**     Defendants admit the allegations in paragraph 29.

30.    The work that Osowiec was involved with and oversaw at Clear Channel was confidential and proprietary to Clear Channel. To carry out her duties and responsibilities, Osowiec was given access to highly confidential information including but not limited to, Clear Channel's confidential pricing algorithm-based software of Best Rate, as well as Tapscan and Radio Fusion, customer needs, research efforts, financial projections and strategic analysis. Through her employment at Clear Channel, Osowiec has intimate knowledge of Clear Channel's strategic priorities and direction for maintaining, upgrading, and expanding its products and services in the future.

**ANSWER:**    Defendants deny the allegations in paragraph 30.

31.    While working at the Chicago facility, Osowiec had access to Clear Channel's computer network and databases that contain Clear Channel's proprietary information.

**ANSWER:**    Defendants admit that Osowiec had access to Clear Channel's

information, but deny that said information is confidential, proprietary or trade secret under

Illinois law.

## OSOWIEC'S RESIGNATION FROM CLEAR CHANNEL

32.    On December 3, 2007, Osowiec gave notice that she was resigning from Clear Channel. Nancy O'Brien, General Sales Manager for WLIT-PM ("O'Brien"), and Jennifer Jennings, WLIT's Local Sales Manager, conducted an exit interview with Osowiec. O'Brien had heard rumors that Osowiec had accepted a position with Citadel. Accordingly, during her portion of the exit interview, she asked Osowiec where she was going to work. Osowiec denied that she had a job. Rather, she stated that she was taking some time off from work. Despite her statements, O'Brien reminded Osowiec about her non-compete agreement and that she could not work for a competitor for a period of 180 days. Osowiec stated that she was aware of the agreement and that she was not going to work for a competitor.

**ANSWER:**    Defendants admit that Osowiec resigned on December 3, 2007 and that

she attended an exit interview conducted by Nancy O'Brien and Jennifer Jennings.

Defendants deny the remaining allegations in paragraph 32.

33.    After that meeting ended, Emily Ruffner, Human Resources Manager for Clear Channel Radio in the Chicago market, conducted a benefits exit interview.

**ANSWER:**    Defendants deny the allegations in paragraph 33.

## OSOWIEC'S IMPROPER ACTIVITIES

34.    Prior to leaving Clear Channel, Osowiec deleted all of the emails in her inbox on Clear Channel's computer system. Moreover, on information and belief, Osowiec accessed Clear Channel's confidential information on a Clear Channel computer, taking confidential information, copying client lists, and copying bid rate information. This behavior was in violation of Osowiec's obligations to Clear Channel pursuant to her non-compete Agreement.

**ANSWER:**    Defendants deny the allegations in paragraph 34.

35.    On January 17, 2008, O'Brien saw Dan Manilla [sic], Citadel's General Sales Manager, at a Broadcast Advertising Club function.  O'Brien asked Manilla [sic] if Osowiec was working for him.  Manilla [sic] responded that Osowiec was working for him as his assistant, not an Account Executive.

**ANSWER:**    Defendants admit the allegations in paragraph 35.

36.    One month later, on February 12, 2008, O'Brien spoke to her friend, Gail Bylin ("Bylin"), at the Chicago Area Dealers Association. During their conversation, Bylin told O'Brien that Osowiec was "sitting at the desk next to her" selling advertising for WZZN.  This is in violation of her non-compete agreement with Clear Channel.

**ANSWER:**    Defendants deny the allegations in paragraph 36.

37.    Clear Channel has verified that since Osowiec started working at WZZN, three advertisers who Osowiec had been working with at WLIT, a Clear Channel affiliate, began advertising on WZZN in January, February and March 2008. Prior to that time, those advertisers had not advertised on WZZN. In addition, those three advertiser's accounts with Clear Channel have decreased in January, February, and March 2008 as compared to January, February and March 2007.

**ANSWER:**    Defendants deny the allegations in paragraph 37.

38.    The damages that Clear Channel has suffered as a result of Osowiec's breach of, her Agreement, misappropriation of trade secrets, and computer fraud vastly exceeds $5,000. Moreover, as a result of Osowiec's computer fraud, Clear Channel has suffered in excess of $5,000 in damage.

**ANSWER:**    Defendants deny the allegations in paragraph 38.

39.    If Osowiec is not restrained as prayed for herein, she and any competitor of Clear Channel to whom Osowiec offers her services, including Citadel, will have an immeasurable and unfair competitive advantage over Clear Channel and will be likely to misappropriate the confidential information removed from Clear Channel.

**ANSWER:**    Defendants deny the allegations in paragraph 39.

40.    In addition, because, on information and belief, the files removed from Clear Channel were in an electronic format, possibly on an electronic disk or hard-drive, the device containing Clear Channel's confidential and proprietary information can quickly and easily be disseminated to a large number of entities, including Clear Channel's competitors. The information can also be perfectly copied just as it had been copied from Clear Channel, uploaded onto other computers, and forwarded to other individuals who can further utilize and disseminate the information. To ensure the return of Clear Channel's confidential and proprietary information, all electronic storage devices and media in Osowiec's possession or control should be recovered and examined, as well as all computers to which Osowiec has access in order to determine if Clear Channel's confidential and proprietary information exists on other media and computers.

**ANSWER:**    Defendants deny the allegations in paragraph 40.

41.    On information and belief, Osowiec is employed at Clear Channel in a capacity similar to that which she held at Clear Channel and in which she works on products in direct competition with Clear Channel's products.  Additionally, it is likely that Osowiec has access to a computer for her work at Citadel to which she can upload Clear Channel's electronic files. Based on Citadel's recent solicitation of companies whose confidential pricing information was contained in data believed misappropriated by Osowiec from Clear Channel, any confidential information in Osowiec's possession would benefit her in her employment at Citadel. The value of Clear Channel's confidential information is immeasurable, therefore Clear Channel does not have an adequate remedy at law.

**ANSWER:**    Defendants admit that Osowiec is employed at WZZN.  Defendants deny

the remaining allegations in paragraph 41.

## COUNT I

## BREACH OF CONTRACT
### (Osowiec)

42.    Clear Channel hereby repeats, realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 41.

**ANSWER:**    Defendants incorporate their answers to paragraphs 1 through 41 as if

reinstated in their entirety as its answer to paragraph 42 herein.

43.     Osowiec's Agreement is a valid and enforceable contract.  The post-employment covenants, confidentiality covenants, and other provisions contained in the Agreement are reasonable in scope and duration and are reasonably necessary to protect legitimate, protectable interests in the goodwill, long-term customer relationships, and proprietary business and customer information of Clear Channel.

**ANSWER:**     Defendants deny the allegations in paragraph 43.

44.     Clear Channel has fully performed all of its obligations under the Agreement.

**ANSWER:**     Defendants lack sufficient information to admit or deny the allegations in

Paragraph 44 and, therefore, deny them.

45.     Osowiec is breaching her Employment Agreements in at least one of the following ways by:

· removing from, retaining, or failing to return Clear Channel's confidential information; and/or

· utilizing or disclosing confidential information of Clear Channel.

**ANSWER:**     Defendants deny the allegations in paragraph 45.

46.     Clear Channel has been and will be damaged as a result of Osowiec's actions in an amount to be determined at trial, and because its remedy at law is inadequate, seeks temporary, preliminary and permanent injunctive relief to recover and protect its property as well as enjoin Osowiec from working for Citadel.

**ANSWER:**     Defendants deny the allegations in paragraph 46.

## COUNT II

## ACTUAL AND THREATENED MISAPPROPRIATION OF
## TRADE SECRETS AND CONFIDENTIAL INFORMA'T'ION
### (Osowiec)

47.     Clear Channel hereby repeats and realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 41.

**ANSWER:**     Defendants incorporate their answers to paragraphs 1 through 41 as if reinstated in their entirety as its answer to paragraph 47 herein.

48.     The proprietary business and customer information of Clear Channel constitutes trade secrets because Clear Channel derives independent economic value from that information, such information is not generally known nor readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and because the information is the subject of reasonable efforts to maintain its secrecy.

**ANSWER:**     Defendants deny the allegations in paragraph 48.

49.     Osowiec misappropriated and/or threatens to inevitably misappropriate Clear Channel's trade secrets without Clear Channel's consent in violation of the Illinois Trade Secrets Act, 765 ILCS 1065 *et seq.*

**ANSWER:**     Defendants deny the allegations in paragraph 49.

50.     On information and belief, Osowiec has become employed by or affiliated with a competitor of Clear Channel and has unlawfully removed Clear Channel's trade secrets to benefit herself and/or a competitor and thus, will inevitably utilize or disclose Clear Channel's trade secrets and/or confidential information.

**ANSWER:**     Defendants deny the allegations of paragraph 50.

51.     Osowiec has been or will be unjustly enriched by the misappropriation of Clear Channel's trade secrets and/or confidential information, and will continue to threaten to use, actually use, divulge, inevitably disclose, acquire and/or otherwise misappropriate Clear Channel's trade secrets and confidential information.

**ANSWER:**     Defendants deny the allegations of paragraph 51.

52.     Osowiec's misappropriation has been willful and malicious.

**ANSWER:**     Defendants deny the allegations of paragraph 52.

53.     As a result of the misappropriation of Clear Channel's trade secrets, Clear Channel faces irreparable injury, has been injured, and/or Osowiec has been unjustly enriched.

**ANSWER:**     Defendants deny the allegations of paragraph 53.

54.     Clear Channel has been damaged as a result of Osowiec's actions in an amount to be determined at trial, and because its remedy at law is inadequate, seeks temporary, preliminary and permanent injunctive relief to recover and protect its property as well as enjoin Osowiec from working for Citadel for six months.

**ANSWER:**     Defendants deny the allegations of paragraph 54.

## COUNT III

## CONVERSION
### (Osowiec)

55.     Clear Channel repeats and realleges the allegations contained in paragraphs 1 through 41 above as if fully set forth herein.

**ANSWER:**     Defendants incorporate their answers to paragraphs 1 through 41 as if reinstated in their entirety as its answer to paragraph 55 herein.

56.     Osowiec removed from Clear Channel or retained its property, including but not limited to, confidential and proprietary information, without authorization, and converted it to his own use.

**ANSWER:**     Defendants deny the allegations of paragraph 56.

57.     Clear Channel has demanded from Osowiec the return of its confidential information through the terms of the Agreement.

**ANSWER:**     Defendants deny the allegations of paragraph 57.

58.     Clear Channel is entitled to the return of its property from Osowiec according to the Agreement.

**ANSWER:**     Defendants deny that Osowiec took any Clear Channel property and therefore denies the allegations in paragraph 58.

59.     Osowiec has failed to return to Clear Channel its property.

**ANSWER:**     Defendants deny that Osowiec took any Clear Channel property and

therefore denies the allegations in paragraph 59.

60.     As a direct and proximate result of Osowiec's actions Clear Channel has been
damaged.

**ANSWER:**     Defendants deny the allegations in paragraph 60.

61.     Clear Channel has suffered damages as a result of Osowiec's actions in an amount
to be determined at trial, and because its remedy at law is inadequate, seeks temporary,
preliminary and permanent injunctive relief to recover and protect its property. Because
Osowiec's actions have been willful, malicious, outrageous, oppressive or done in complete
disregard of the consequences they might have for Clear Channel, the award of exemplary and
punitive damages in an amount to be proven at trial are proper.

**ANSWER:**     Defendants deny the allegations in paragraph 61.     Defendants

specifically deny that Plaintiff is entitled to any relief whatsoever.

## COUNT IV

## VIOLATION OF THE COMPUTER FRAUD AND A13USE ACT
## 18 U.S.C. § 1030 ET SEQ.
### (Osowiec)

62.     Clear Channel incorporates by reference the allegations which are contained in
paragraphs I through 41 above as if frilly set forth herein.

**ANSWER:**     Defendants incorporate their answers to paragraphs 1 through 41 as if

reinstated in their entirety as its answer to paragraph 62 herein.

63.     Clear Channel's computer system is a protected computer network which is used
across state lines in interstate commerce, has Internet access across state lines, and is used to
transfer Clear Channel's information for sale in interstate commerce.

**ANSWER:**     Defendants admit the allegations in paragraph 63.

64.     Osowiec was not authorized by Clear Channel to access its computer systems for
personal gain, access its computerized information, copy electronic information files, send
electronic files to USl3 memory devices or other storage devices, delete emails on her Clear
Channel account at the termination of her employment, print confidential or trade secret

materials from Clear Channel's system, or continue to possess Clear Channel's electronic files and data for personal gain or that of a competitor.

   **ANSWER:**   Defendants deny the allegations in paragraph 64.


   65.   Clear Channel has expended or lost over $5,000 to investigate Osowiec's breaches and in lost business or opportunities as a result of these unauthorized accesses.

   **ANSWER:**   Defendants deny the allegations in paragraph 65.

   66.   Osowiec:

   a.   intentionally accessed a computer system without authorization or exceeded their authority to obtain information from a protected computer causing damage in excess of $5,000.00 in violation of 18 U.S.C. § 1030(a)(2)(C);

   b.   knowingly and with intent to defraud, accessed a protected computer without authorization or exceeded their authority, and by means of such conduct furthered the intended fraud and obtained valuable information resulting in damages exceeding $5,000.00 in violation of 18 U.S.C. § 1030(a)(4);

   c.   knowingly caused the transmission of a program, information, code, or command, and as a result of such conduct, intentionally caused damage without authorization, to a protected computer in excess of $5,000.00 in violation of 18 U.S.C. § 1030(a)(5)(A)(i) and/or

   d.   intentionally accessed a protected computer without authorization or exceeded his authority, and, as a result of such conduct, caused damage in excess of $5,000.00 in violation of 18 U.S.C. § 1030(a)(5)(A)(iii).

   **ANSWER:**   Defendants deny the allegations in paragraph 66.

   67.   Clear Channel has suffered damages as a result of Osowiec's actions in an amount

to be determined at trial and because its remedy at law is inadequate, seeks injunctive relief to recover and protect its information, its goodwill and other legitimate business interests.

**ANSWER:**     Defendants deny the allegations in paragraph 67 and deny that Plaintiff

is entitled to any relief whatsoever.

## COUNT V

## TORTIOUS INTERFERENCE WITH CONTRACT
### (Citadel)

68.     Clear Channel incorporates by reference the allegations which are contained in paragraphs 1 through 41 above as if fully set forth herein.

**ANSWER:**     Defendants incorporate their answers to paragraphs 1 through 41 as if

reinstated in their entirety as its answer to paragraph 68 herein.

69.     Osowiec's Agreement is a valid and enforceable contract. The post-employment covenants, confidentiality covenants, and other provisions contained in the Agreement are reasonable in scope and duration and are reasonably necessary to protect legitimate, protectable interests in the goodwill, long-term customer relationships, and proprietary business and customer information of Clear Channel.

**ANSWER**:     Defendants deny the allegations in paragraph 69.

70.     Citadel knew of this Agreement before soliciting Osowiec's employment, at the time of her hiring, and at present.

**ANSWER:**     Defendants deny the allegations in paragraph 70.

71.     On information and belief, Citadel intentionally and unjustifiably induced Osowiec's breach of her Agreement and induced her to misappropriate and illegally access and abuse Osowiec's rights to access of Clear Channel's computers, which caused a subsequent breach of Osowiec's Agreement with Clear Channel, including, but not limited to misappropriating Clear Channel's trade secrets, violating the terms other non-compete agreement with Clear Channel, and violation their non-solicitation agreement with Clear Channel by soliciting business from Broadway in Chicago, Natural Hair Growth, Paramount Theatre, and other Clear Channel customers.

**ANSWER:**     Defendants deny the allegations in paragraph 71.

72.     As a result of Citadel's tortious conduct, Clear Channel has suffered damages in an amount to be determined at trial and because its remedy at law is inadequate, seeks injunctive

relief to recover and protect its information, its goodwill and other legitimate business interests.

**ANSWER:**    Defendants deny the allegations in paragraph 72 and specifically deny

that Plaintiff is entitled to any relief whatsoever.

## COUNT VI

## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (Osowiec, & Citadel)

73.    Clear Channel incorporates by reference the allegations which are contained in paragraphs 1 through 41 above as if fully set forth herein.

**ANSWER:**    Defendants incorporate their answers to paragraphs 1 through 41 as if

reinstated in their entirety as its answer to paragraph 73 herein.

74.    Clear Channel has long-standing, near permanent relationships with its customers, to whom Clear Channel provides with media advertising spots on its radio channels. The value of these media spots, as explained *supra,* is determined through Clear Channel's proprietary software, which evaluates market conditions to determine the price at which a spot should be sold at any given time, including over a future period.

**ANSWER:**    Defendants deny the allegations in paragraph 74.

75.    As a result of her employment with Clear Channel, Osowiec knew of and utilized Clear Channel's proprietary information in performing her duties at Clear Channel. On information and belief, Osowiec misappropriated Clear Channel's trade secrets and have improperly used that information to solicit Clear Channel's customers, with whom Clear Channel had an expectation of doing continued business, including, but not limited to, Broadway in Chicago, Natural Hair Growth, and Paramount Theatre.

**ANSWER:**    Defendants deny the allegations in paragraph 75

76.    Due to Osowiec's current employment with Citadel and, on information and belief, at Citadel's direction, Osowiec has improperly used Clear Channel's proprietary information to solicit Clear Channel's customers.

**ANSWER:**    Defendants deny the allegations in paragraph 76.

77.    As a result of Osowiec and Citadel's interference, Osowiec and Citadel caused a breach of the relationship and expectancy Clear Channel had with its customers.

**ANSWER:**    Defendants deny the allegations in paragraph 77.

78.     As a result of Osowiec and Citadel's tortious conduct, Clear Channel has suffered damages in an amount to be determined at trial and because its remedy at law is inadequate, seeks injunctive relief to recover and protect its information, its goodwill and other legitimate business interests.

**ANSWER:**     Defendants deny the allegations in paragraph 78 and deny that Plaintiff

is entitled to any relief whatsoever.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Clear Channel Broadcasting, Inc. seeks judgment in its favor and an Order granting the following relief:

A.     That Osowiec and Citadel and all parties in active concert or participation with them who receive actual notice of the order by personal service or otherwise be temporarily, preliminarily and permanently enjoined from using or disclosing any confidential information obtained by Osowiec from Clear Channel;

B.     That Osowiec and Citadel and all parties in active concert or participation with them who receive actual notice of the order by personal service or otherwise be enjoined and ordered to return to Clear Channel all originals and all copies of files, data, and information removed from Clear Channel;

C.     That Osowiec and Citadel and all parties in active concert or participation with them who receive actual notice of the order by personal service or otherwise be ordered to preserve all disks and electronic storage devices in her custody, possession and control to which Osowiec had access, and to turn over to a third-party investigator representative of Clear Channel all electronic storage media in her custody, possession or control, including but not limited to, disks, hard drives and e-mail accounts accessible to Osowiec on which Clear Channel's information may reside and that Clear Channel be permitted to image and analyze said media and devices to recover and account for Clear Channel's confidential information;

D.     That Osowiec be enjoined and ordered to provide a sworn statement and accounting of the whereabouts of all files, data, and information removed from Clear Channel;

E.     That Osowiec be temporarily, preliminarily, and permanently enjoined from carrying out any job function at Citadel in which she would have responsibility for or access to products competitive with Clear Channel's products on which Osowiec worked while employed by Clear Channel;

F.     That Clear Channel be awarded money damages in an amount to be proven a trial;

G.     That Clear Channel be awarded exemplary or punitive damages in an amount to be

proven at trial for conversion of Clear Channel property;

H.     That Clear Channel be awarded treble damages pursuant to the misappropriation of trade secrets statute;

1.     That Clear Channel be awarded its attorneys fees pursuant to the misappropriation of trade secrets statute; and

J.     That the Court grant such further relief as the Court deems just.

**ANSWER:**     Defendants deny that Plaintiff is entitled to any relief whatsoever.

## **ADDITIONAL DEFENSES**

1.     This Court lacks jurisdiction to hear Plaintiff's claims.

2.     Plaintiff's complaint fails to state a claim for which relief may be granted.

3.     Plaintiff cannot establish any protectable interest to support the non-compete agreement and thus the agreement is unenforceable as a matter of law.

4.     The terms of the non-compete agreement are overbroad and thus the agreement is unenforceable as a matter of law.

5.     Plaintiff failed to mitigate its damages, if any.


Respectfully submitted,

CHICAGO FM RADIO ASSETS, LLC and
REBECCA OSOWIEC


By:     /s/ Susan M. Benton

Susan M. Benton
Sean Nash
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600
sbenton@winston.com
snash@winston.com

## VERIFICATION

Rebecca Osowiec, pursuant to 28 U.S.C. §1746, states under penalty of perjury under the laws of the United States of America that she is authorized to respond to Plaintiff's Verified Complaint and that the statements contained within paragraphs three (3), twelve (12), thirteen (13), fourteen (14), twenty (20), twenty-one (21), twenty-two (22), twenty-three (23), twenty-four (24), twenty-six (26), twenty-eight (28), twenty-nine (29), thirty (30), thirty-one (31), thirty-two (32), thirty-three (33), thirty-four (34), forty (40) and forty-one (41) of the foregoing Verified Answer to Complaint are true and correct to the best of her knowledge, information and belief.

Rebecca Osowiec

SUBSCRIBED AND SWORN TO before me this 2ND day of MAY, 2008

Notary Public

My Commission Expires: 7/30/2011

OFFICIAL SEAL
JOCELYN VARGAS
NOTARY PUBLIC - STATE OF ILLINO
MY COMMISSION EXPIRES:07/30/11

CHI:2080405.6

- 24 -

## VERIFICATION

Daniel Manella, General Sales Manager for Defendant Chicago FM Radio Assets, LLC, pursuant to 28 U.S.C. §1746, states under penalty of perjury under the laws of the United States of America that he is authorized to respond to Plaintiff's Verified Complaint and that the statements contained within the foregoing Verified Answer to Complaint are true and correct to the best of his/her knowledge, information and belief.

_____
Daniel Manella

SUBSCRIBED AND SWORN TO before me
this 2ND day of mAy, 2008

_____
Notary Public
My Commission Expires: 7/30/2011

OFFICIAL SEAL
JOCELYN VARGAS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/30/11

- 23 -